**Richard Elliott TOSON**

v.

**UNITED STATES of America.**

**Hubert Harold PENLAND**

v.

**UNITED STATES of America.**

Civ. Nos. C–81–1847–A, C–81–1314–A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 25, 1982.

**372**

Paul C. Parker, Decatur, Ga., for plaintiff.

J. Sam Plowden, Atlanta, Ga., Trustee.

Douglas P. Roberto, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

These bankruptcy appeals arise out of disputes between the Social Security Administration (the "administration") and the debtors as to whether social security benefits are subject to assignment in a case under Chapter 13 of the Bankruptcy Code. Both of these debtors commenced actions under Chapter 13 of the Bankruptcy Code, filing a voluntary petition and plan in order to repay their creditors over an extended period of time. The debtors, as recipients of benefits under the Social Security Act (the "Act"), requested that their proposed Chapter 13 plans be funded as deductions from the benefits due them under the Act. Routine orders were entered by the bankruptcy court directing that a portion of the debtors' monthly benefits be paid directly to the bankruptcy trustee rather than the debtors. The administration, after notification of these orders, sought a ruling from the bankruptcy court that because the Act specifically prohibits assignment of the debtors' benefits, the administration was not required to comply with the order. *See,* 42 U.S.C. §§ 407 and 1383(d)(1). The bankruptcy court denied the administration's motions in both cases and ordered the administration to comply with the previous orders. The present cases are appeals from the bankruptcy court's orders that the administration comply with the orders to pay benefits to the trustee. The cases have been consolidated before this court for purposes of appeal.

▮ The issue raised by these appeals is whether there is an irreconcilable conflict between Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–1330, and the anti-assignment provisions of the Social Security Act, 42 U.S.C. §§ 407 and 1383(d)(1). If such a conflict exists, the court must decide whether to find implicit repeal of the conflicting sections of the Social Security Act by the later enactment of the Bankruptcy Code. The parties agree that the Congress did not specifically repeal or amend these portions of the Social Security Act with the enactment of the Bankruptcy Code.

While these appeals present a matter of first impression in this court, one other district court has previously addressed the issue of the apparent conflict between these provisions of the Bankruptcy Code and the Social Security Act in a thoughtful and well-researched opinion. *In re Buren*, 6 B.R. 744 (D.C.M.D.Tenn.1980) (Wiseman, J.). Several reported decisions of bankruptcy courts have also discussed this issue. *In re Devall*, 9 B.R. 41 (Bkrtcy.M.D.Ala.1980); *In re Hughes*, 7 B.R. 791 (Bkrtcy.E.D.Tenn. 1980); *In re Williams*, 13 B.R. 640 (Bkrtcy. E.D.Wash.1981). All of these cases hold that the anti-assignment provisions of the Social Security Act are, in part, repealed by implication by enactment of the Bankruptcy Code.

The existence of a conflict between Chapter 13 of the Bankruptcy Code and the Social Security Act cannot be seriously disputed. The Bankruptcy Code, enacted in 1978, can be read as implicitly repealing the previously cited sections of the Social Security Act, even without reference to the legislative history of the Code. The Social Security Act, originally enacted in 1935, contains a strong anti-assignment provision.

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law.*

42 U.S.C. § 407 (emphasis added). One of the changes which Congress sought to make by enactment of the Bankruptcy Code was to *expand* the types of interests which could be assigned under Chapter 13, and those expanded interests appear to include social security benefits. Chapter 13 provides for the voluntary assignment of any interests contained in the estate. *See,* 11 U.S.C. § 1322. The estate of any person filing for relief under the Bankruptcy Code includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). In addition, the estate of a Chapter 13 debtor includes all legal or equitable interests in property which "the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(1). The estate of a Chapter 13 debtor therefore includes all regular sources of income, unlike the estate of a debtor under a chapter 7 liquidation. *See,* 11 U.S.C. § 726. The drafters of the Bankruptcy Code appear to have specifically included in the estate even interests which are not otherwise assignable, such as social security benefits. According to 11 U.S.C. § 541(c)(1)(A), the estate includes all legal and equitable interests of the debtor "notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor...."

More clearly than in the Code itself, Congress manifested its intent to exempt Chapter 13 debtors from the anti-assignment provisions of the Social Security Act in the legislative history of the Bankruptcy Code. The basic purpose of Chapter 13 is to enable an individual who has a regular source of income "to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection." S.Rep.No. 95–989, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad. News, pp. 5787, 5798. Protections of the bankruptcy court, such as the automatic stay provisions of 11 U.S.C. § 362 or the stay of actions against co-debtors, are not available to an individual who wishes to pay his creditors out of benefits due under the Social Security Act if such benefits cannot become part of the debtor's estate. The Senate Report for the Bankruptcy Code noted that Chapter 13 of the old Bankruptcy Act was "basically and seriously defective" because it did not "permit some individuals with regular incomes to qualify, such as ... social welfare recipients, because their principal incomes do not come from wages, salary, or commissions." Id. at 13, [1978] U.S.Code Cong. & Ad.News at p. 5799. Both the Senate and House committee reports expressed the opinion that, un-

der the new Chapter 13, "individuals on welfare, *social security*, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy." S.Rep.No. 95–989, supra, at 24 (emphasis added), [1978] U.S.Code Cong. & Ad.News at 5810; H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 312 *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5963, 6269 (emphasis added). As stated by Judge Wiseman in *In re Buren* :

> Obviously, the thrust of the Chapter 13 revision was to make its provisions available to a range of persons wider than the *prior law.* Expansion of the class to whom Chapter 13 is available comports with the basic legislative goal: to encourage financially overextended individual debtors to make greater use of voluntary repayment plans and thereby improve debtor relief, by allowing ratable distribution of future income without necessarily liquidating their nonexempt assets, and creditor recovery, by guaranteeing repayment of most, if not all, of the claims over an extended period. H.R. Rep.No. 95–595m, 95th Cong., 1st Sess., 116–20. *See* 5 Collier on Bankruptcy ¶ 1300.02, at 1300–19—1300–21 (15th ed. 1980). The clear purpose and intent of Congress was that social welfare recipients not be denied the benefits of Chapter 13 plans.

6 B.R. at 746.

The administration, citing *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), argues that the court should not be influenced by the committee reports accompanying the Bankruptcy Code because language in a committee report dealing with one statute cannot overcome the express terms of another statute. *Hill* is inapposite for two reasons. First, as previously discussed, there is a direct conflict between the Bankruptcy Code and the anti-assignment provisions of the Social Security Act. No direct conflict existed in *Hill.* 437 U.S. at 189, 98 S.Ct. at 2299. Second, the Judiciary Committee reports to which this court refers are of greater value in identifying conflicts than were the Appropriations Committee reports in *Hill.* With or without the committee reports, the appropriations bill in *Hill* could not alter existing law. Appropriations bills have the "limited and specific purpose of providing funds for authorized programs." 437 U.S. at 190, 98 S.Ct. at 2300. Without such a limitation on the effect of appropriations bills, "every appropriations measure would be pregnant with prospects of altering substantive legislation, repealing by implication any prior statute which might prohibit the expenditure." *Id.* House rules cited in *Hill* expressly state that no provision in any appropriations bill which changes existing law is in order. 437 U.S. at 191, 98 S.Ct. at 2300. Even the court in *Hill* recognized the value of committee reports in clarifying whether a substantive bill is intended to alter the effect of existing legislation. 437 U.S. at 178–188, 98 S.Ct. at 2293–2298.

■ The administration urges the court to reconcile the statutes instead of finding a repeal by implication. Of course, this court should not find a repeal by implication if the earlier and later statutes are reconcilable. *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–54, 42 L.Ed.2d 320 (1974). The administration proposes that the provision of the Bankruptcy Code which excludes spendthrift trusts from the estate of a debtor be interpreted to also exclude social security benefits. That provision states, "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). The administration would have the court construe the benefits paid under the Social Security Act as a "beneficial interest" under this provision and would have the court hold that such benefits are therefore not part of the estate. The administration argues that the anti-assignment provisions of the Act show that payments under the Act are in the nature of a spendthrift trust payment.

The administration, by this proposal, is effectively requesting that the court rewrite this provision of the Bankruptcy Code for the administration's benefit. The administration has cited no authority which interprets the recipient of social security benefits as having a "beneficial interest" in a "trust." The administration admits that, while some Social Security Act benefits are paid out of trust funds, other such benefits are paid out of general revenues. The legislative history of 11 U.S.C. § 541(c)(2) shows that neither the House nor the Senate intended this provision to exempt property from the estate other than property contained in spendthrift trusts. S.Rep.No. 95–989, *supra*, at 5869 [1978] U.S.Code Cong. & Ad.News at 5869; H.R.Rep.No. 95–595, *supra*, at 369, [1978] U.S.Code Cong. & Ad.News at 6325. The court will not reinterpret this provision to include social security benefits.

█ The court concludes that there is an irreconcilable conflict between Chapter 13 of the Bankruptcy Code and the anti-assignment provisions of the Social Security Act, and that the enactment of the Bankruptcy Code partially repealed the anti-assignment provisions by implication. The court does not hold that all social security benefits are property of the estate of any debtor under the Bankruptcy Code. The facts before the court involve only debtors under Chapter 13 of the Bankruptcy Code, and the court relies on legislative history only of Chapter 13 in finding the intent to include Social Security benefits in the debtor's estate. There is no indication that Congress intended social security benefits to be subject to the Bankruptcy Code except where that action could be taken voluntarily by the debtor. Accordingly, the court holds that social security benefits are subject to the operation of the bankruptcy laws only insofar as the debtor is allowed voluntarily to include the benefits as property of the estate in a chapter 13 proceeding.

Affirmed.