**In re Harry Lee McLEAN, Debtor,**

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE PENSION FUND, Appellant,**

v.

**William K. STEPHENSON, Trustee, and Harry Lee McLean, Debtor, Appellees.**

**Civ. A. No. 83–1450–15, Bankruptcy No. 82–01065.**

United States District Court, D. South Carolina, Columbia Division.

June 15, 1984.

894

Michele L. Tate, Chicago, Ill. and Carlton B. Bagby, Columbia, S.C., for appellant.

Sue C. Erwin, Columbia, S.C., for trustee.

Anne McClain Johnson, Columbia, S.C., for debtor.

## ORDER

HAMILTON, District Judge.

The issues presented in this case arise by way of an appeal from the United States Bankruptcy Court for the District of South Carolina (hereinafter "Bankruptcy Court"). Jurisdiction is founded upon 28 U.S.C. § 1334. The matters raised herein involve the interrelationship of the Bankruptcy Code of 1978[1] (hereinafter "Bankruptcy Code"), the Employee Retirement Income Security Act[2] (hereinafter "ERISA"), and certain provisions of the Internal Revenue Code[3] (hereinafter "IRC").

---

**1.** 11 U.S.C. § 101 *et seq.*

**2.** 29 U.S.C. § 1001 *et seq.*

**3.** 26 U.S.C. § 1 *et seq.*

The debtor in this case is a retired member of the Teamsters Union. As a member of the Teamsters, the debtor was a participant in a qualified pension fund, the Central States, Southeast and Southwest Areas Pension Fund (hereinafter "Pension Fund"). The Pension Fund agreement contains a provision whereby a beneficiary's interest may neither be assigned nor otherwise alienated. Such an anti-alienation provision was necessary in order for the Pension Fund to constitute a "qualified trust" under ERISA,[4] eligible for tax exempt status under the IRC.[5] The debtor herein currently receives a monthly payment from the Pension Fund in the amount of Five Hundred Seventy-five Dollars ($575.00).

On July 2, 1982, the debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.* In formulating his Chapter 13 reorganization plan, the debtor listed his monthly pension benefits as income available to fund the plan. On August 23, 1982, the Bankruptcy Court issued an order pursuant to 11 U.S.C. § 1325(b),[6] requiring the Pension Fund to pay a portion of the debtor's monthly benefits directly to the trustee (hereinafter the "Pay Order").

On September 21, 1982, the Pension Fund wrote to the trustee asserting that it could not comply with the Pay Order inasmuch as it constituted a violation of the anti-alienation provision of the Pension Fund agreement.[7] The Pension Fund contended that, were it to comply with the Pay Order, it would lose its tax exempt status. *See* Private Letter Rul. 8131020, Pens. Plan Guide ¶ 17,373B (CCH May 5, 1981). Over the Pension Fund's objection, the Bankruptcy Court confirmed the debtor's amended plan of reorganization on December 29, 1982, and issued an amended Pay Order the next day.

Despite the outstanding Pay Order, the Pension Fund refused to pay the required amount to the trustee and moved that the Bankruptcy Court reconsider its earlier ruling.[8] On May 5, 1983, the Bankruptcy Court issued an order wherein it rejected the arguments of the Pension Fund and required the Pension Fund to comply with the Pay Order. The Bankruptcy Court reasoned that, although the corpus of the Pension Fund was protected from the trustee's reach pursuant to 11 U.S.C. § 541(c)(2), the trustee could reach the distributions to which the debtor had already become entitled.[9] *See* Bankruptcy Court order at 4. The Bankruptcy Court further held that the passage of the Bankruptcy Code in 1978 implicitly repealed the contradictory

---

**4.** 29 U.S.C. § 1056(d)(1) provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

**5.** 26 U.S.C. § 401(a)(13) provides: "A trust shall not constitute a qualified trust under this subsection unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." *See also* 26 C.F.R. § 1.401(a)–13.

**6.** 11 U.S.C. § 1325(b) provides: "After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee."

**7.** *See supra* notes 4 and 5.

**8.** Since the inception of this controversy, the Pension Fund has continued to make payments directly to the debtor, who in turn forwards the required amount to the trustee.

**9.** 11 U.S.C. § 541(a)(1) provides: "Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case" is property of the estate. 11 U.S.C. § 541(c) provides:

(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

provisions of ERISA and the IRC. Bankruptcy Court Order at 5. The Pension Fund subsequently filed this appeal.

## I.

The Pension Fund initially argues that an ERISA qualifying pension fund is not "property of the estate" under 11 U.S.C. § 1306. This provision states, *inter alia:*

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7 or 11 of this title, whichever occurs first.

Since the payments received from an ERISA qualified pension fund do not constitute earnings from services performed by the debtor after the commencement of the case, the court must determine whether the Pension Fund benefits constitute "property of the estate" under the general provisions of 11 U.S.C. § 541.

Property of the debtor's estate in bankruptcy is broadly defined, including "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). An interest of the debtor in property becomes property of the estate under this definition "notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor ...." 11 U.S.C. § 541(c)(1)(A).

Although the aforementioned definitions would clearly seem to contemplate including the Pension Fund proceeds within the "property of the estate," Congress has seen fit to wholly exclude at least one class of property interests from becoming property of the estate. In 11 U.S.C. § 541(c)(2), the Bankruptcy Code provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The Pension Fund asserts that, because ERISA requires a prohibition against assignment or alienation of Pension Fund benefits and such restriction is enforceable in nonbankruptcy law, the benefits fall within the class of property excluded from the bankrupt's estate. To determine the issue of what constitutes "property of the estate," the court deems it appropriate to examine the legislative history of the Bankruptcy Code.

The legislative history of the Bankruptcy Code indicates that an expansive interpretation should be given to the term "property of the estate." Under the Bankruptcy Act of 1898, property of the estate was a nebulous concept turning upon the transferability or leviability of a debtor's property under state law. If a debtor's property was exempt from execution under federal or state law, it never passed into the property of the bankrupt's estate. The new Bankruptcy Code, however, reflected a substantial change in the determination of property of the estate. The Bankruptcy Code abandoned the uncertain transferability-leviability concept, and provided instead that all legal and equitable interests of the debtor in property become property of the estate. *Samore v. Graham (In re Graham),* 726 F.2d 1268 (8th Cir.1984). Property of the estate now *includes* exempt property, which may then be exempted from property of the estate under 11 U.S.C. § 522. *Shirkey v. Leake,* 715 F.2d 859, 863 (4th Cir.1983). "Under proposed section 541 [now enacted 11 U.S.C. § 541], all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate under [section 522]." S.Rep. No. 95–989, 95th Cong., 2d Sess. 75–76, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5861 (hereinafter the "Senate Report"). *See also,* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 360, *reprinted in*

1978 U.S.Code Cong. & Ad.News 5963, 6316 (hereinafter the "House Report").

By contrast to the expansive definition to be given to the term "property of the estate" under § 541(a)(1), the legislative history of § 541(c)(2) indicates that the exclusion provided therein was to be narrowly construed. The House Report stated:

> Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a *spendthrift trust* to the extent that the restriction is enforceable under applicable nonbankruptcy law.

House Report at 369, 1978 U.S.Code Cong. & Ad.News at 6325 (emphasis added).[10] While the exclusion of § 541(c)(2) refers to general restrictions on transfers of beneficial interests in trusts, Congress envisioned only that the classic spendthrift trust be excluded from the bankrupt's estate.

A classic spendthrift trust is a trust "intended to secure the trust fund against the improvidence of the cestui que trust [beneficiary] by protecting it against his creditors and rendering it inalienable by him before payment ...." 89 C.J.S. *Trusts* § 26 (1955). "In the case of trusts containing restraints against the alienation of income, frequently known as spendthrift trusts, *the beneficiary cannot alienate the income before it becomes due.*" 90 C.J.S. *Trusts* § 194 (1955) (emphasis added).

■ The above cited passages are persuasive that ERISA qualified pension plans, despite their anti-alienation provisions, do not constitute classic spendthrift trusts, and thus are not excluded from a bankrupt's estate under § 541(c)(2). While a classic spendthrift trust does not allow a beneficiary to transfer any portion of his interest in the trust, ERISA specifically allows a beneficiary of a qualified pension plan to voluntarily assign up to ten percent of any benefit payment. 29 U.S.C. § 1056(d)(2); 26 C.F.R. § 1.401(a)–13(d)(1). A beneficiary may encumber his interest in an ERISA qualified plan by offering his interest as security for a loan. 29 U.S.C. § 1056(d)(2); 26 C.F.R. § 1.401(a)–13(d)(2). Furthermore, ERISA allows a complete alienation of benefits under certain conditions.

> [A]n arrangement whereby a participant or beneficiary directs the plan to pay all, or any portion, of a plan benefit payment to a third party (which includes the participant's employer) will not constitute an "assignment or alienation" [under ERISA] if—
>
> (i) It is revocable at any time by the participant or beneficiary; and
>
> (ii) The third party files a written acknowledgement with the plan administrator ....

26 C.F.R. § 1.401(a)–13(e)(1). Finally, the Internal Revenue Service has issued a ruling that a retired employee may authorize a trustee to deduct and pay union dues from an ERISA qualified plan without the plan losing its tax exempt status. Rev.Rul. 68–159, 1968–1 C.B. 153. None of these transactions would be allowable were an ERISA qualified plan a true or classic spendthrift trust. These allowable transactions, therefore, indicate that an ERISA pension plan is not similar to a spendthrift trust[11] and is thus not excluded from the

---

**10.** The Senate Report contained substantially the same language. In discussing the exclusion of § 541(c)(2), however, the Senate Report provided that "[p]aragraph (2) of subsection (c), however, preserves restrictions on a transfer of a *spendthrift trust* that the restriction is enforceable nonbankruptcy law to the extent of the

income reasonably necessary for the support of a debtor and his dependents." Senate Report at 83, 1978 U.S. Code Cong. & Ad. News at 5869 (emphasis added).

**11.** The trustee argues that, since ERISA funds may be garnished to pay family support obligations (*see American Telephone and Telegraph*

bankrupt's estate under 11 U.S.C. § 541(c)(2). The ERISA anti-alienation clause is merely a provision "that restricts or conditions transfer of" the debtor's interest, and such clauses are avoided in bankruptcy. 11 U.S.C. § 541(c)(1)(A).

This court's conclusion is further buttressed by the clear congressional intent that ERISA qualified pension plans would constitute an exemption from the bankrupt's estate pursuant to § 522 of the Bankruptcy Code, and *not* an exclusion under § 541(c)(2). The difference between an *exemption* and an *exclusion* is crucial to the determination of whether the Pension Fund benefits constitute property of the estate. An *exclusion* under § 541(c)(2) prevents property from ever passing into the estate under the control of the trustee. By contrast, *exempt* property under § 522 *does* constitute property of the estate and passes to the trustee upon the filing of a petition in bankruptcy. A debtor may claim a proper exemption and remove such property from the estate, but unless and until a proper exemption is claimed, the property remains in the estate subject to the claims of creditors. Thus, if a debtor chooses not to claim an exemption, such property may be distributed to his creditors. Accordingly, exempt property may be used to fund a Chapter 13 plan.

ERISA qualified pension benefits clearly constitute an exemption under 11 U.S.C. § 522(d), the provision which sets forth the federal exemptions.

(d) The following property may be *exempted* under subsection (b)(1) of this section:

. . . .

(10) The debtor's right to receive—

. . . .

(E) a payment under a stock bonus, *pension*, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or *length of service*, to the extent reasonably necessary for the support of the debtor . . . .

11 U.S.C. § 522(d)(10)(E) (emphasis added). Since this section deals specifically with pension plans, this provision must take precedence over the general language of § 541(c)(2). *See* 73 Am. Jur. 2d *Statutes* § 257 (1974). The Pension Fund benefits arise from the debtor's length of service in his employment, and thus must be construed as an exemption under § 522(d)(10)(E). Inasmuch as Congress envisioned that such benefits would be an exemption under § 522, it must have contemplated that ERISA qualified benefits would constitute property of the estate. *Cf., Tignor v. Parkinson (In re Tignor),* 729 F.2d 977 (4th Cir.1984).

The Pension Fund contends that § 522 should not be read as an indication of congressional intent to include ERISA qualifying pension benefits within the property of the estate, noting that § 522(d)(10)(E) would also include non-qualifying pension funds. The legislative history to § 522 belies the Pension Fund's argument, however, and clearly indicates that ERISA qualified benefits were intended to fall within the purview of § 522(d)(10(E). In hearings held prior to the passage of the Bankruptcy Code, Senator Quentin Burdick questioned the interplay of ERISA and the Bankruptcy Code's exemption provision:

Senator BURDICK. What provision would you recommend to reconcile the provisions of the Employees Retirement Income Security Act of 1974 with section 4–503(c)(6) of the Commission's bill and 4–503(e)(5) of the judge's bill?

Mr. CREEDON. This I guess has to do with the fact that ERISA provides that a pension benefit is not assignable and the Commission's bill would allow *an exemption* only with respect to that portion of the pension plan that is necessary for the bankrupt's maintenance.

*Co. v. Merry,* 592 F.2d 118 (2d Cir.1979), ERISA qualified trusts differ from a classic spendthrift trust. Even the classic spendthrift trust, however, may be garnished to satisfy family support obligations. *See McLean v. McLean,* 273 S.C. 571, 257 S.E.2d 751 (1979).

I guess something could be put in the Bankruptcy Act to the effect that notwithstanding the provision in ERISA or otherwise, the trustee will be able to get to the excess.

Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 94th Cong., 1st Sess. 678 (1975) (emphasis added). This passage clearly indicates that ERISA qualified benefits were intended to be an exemption from the bankrupt's estate under § 522, *not* an exclusion under § 541(c)(2).

Finally, the court notes that certain pension plans *must* qualify under ERISA in order to be eligible as an exemption under § 522(d)(10)(E). Pension plans established by an "insider" [12] must have the anti-alienation clause mandated by ERISA.[13] If such a clause against alienation were to be held to exclude such property interests from the bankrupt's estate, this detailed provision would be wholly superfluous.

In the interpretation of a statute, the legislature will be presumed to have inserted every part thereof for a purpose. Thus, it should not be presumed that any provision of a statute is redundant. *A statute should not be construed in such manner as to render it partly ineffective or inefficient if another construction will make it effective.* Indeed, it is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every part of the act, including every section, paragraph, sentence or clause, phrase and word.

73 Am.Jur.2d *Statutes* § 250 (1974) (emphasis added). In examining the Bankruptcy Code as a whole as well as its legislative history, the court must conclude that the particularized provisions of § 522 must control over the narrow exclusion contained in § 541(c)(2), and Congress thus envisioned a procedure whereby ERISA qualified pension benefits would be brought into the bankrupt's estate subject to exemption.

Although there are conflicting rulings on whether an anti-alienation provision serves to exclude property from the bankrupt's estate, the majority of the courts which have considered the issue have held that such clauses do not prevent property interests from passing to the trustee. *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984); *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982); *In re Kelley*, 31 B.R. 786 (Bankr.N.D.Ohio 1983); *Firestone v. Metropolitan Life Insurance Co. (In re DiPiazza)*, 29 B.R. 916 (Bankr.N.D.Ill.1983); *In re Wood*, 23 B.R. 552 (Bankr.E.D.Tenn. 1982). *See Barr v. Hinshaw (In re Hinshaw)*, 23 B.R. 233 (Bankr.D.Kan.1982) (ERISA benefits held to be an exemption under § 522(d)(10)(E)). *See also Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983) (ERISA qualified "Keogh plan" held to be property of the estate notwithstanding a prohibition against alienation). *Cf., United States v. Devall*, 704 F.2d 1513 (11th Cir.1983); *Toson v. United States*, 18 B.R. 371 (N.D.Ga.1982); *In re Greene*, 27 B.R. 462 (Bankr.E.D.Va.1983) (all holding that social security benefits are property of the estate despite a statutory prohibition against alienation). *But see Clotfelter v. CIBA–GEIGY Corp. (In re Threewit)*, 24 B.R. 927 (D.Kan.1982); *In re Rogers*, 24 B.R. 181 (Bankr.D.Ariz.1982) (holding that ERISA benefits are not property of the estate); *Hildebrand v. Social Security Administration (In re Buren)*, 725 F.2d 1080 (6th Cir.1984) (holding that social security benefits are excluded from property of the estate because of the statutory anti-alienation provision).

The most recent decision involving ERISA qualified pension plans ruled that benefits from such plans *do* constitute property of the estate. *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984). In *Graham*, the court held:

It was with private plans particularly in mind that the Commission on the Bankruptcy Laws proposed the reasonable support limitation [for ERISA exemptions under § 522(d)(10)(E)], because

---

**12.** *See* 11 U.S.C. § 101(25).

**13.** *See* 11 U.S.C. § 522(d)(10)(E)(i–iii).

of the well-known fact that a corporate officer or a member of a professional corporation may be entitled to vested pension benefits aggregating hundreds of thousands of dollars. Plumb, *The Recommendations of the Commission on the Bankruptcy Laws—Exempt and Immune Property*, 61 Va.L.Rev. 1, 59 (1975) (citing Commission's note 8 to Proposed Bankruptcy Act § 4–503; S. Rep. No. 552, 91st Cong., 1st Sess. 201, 271 (1969)). While the § 522(d)(10(E) exemption would apply to non-ERISA plans as well as to qualified ERISA plans, *the latter are certainly included within its terms.*

The state exemption systems of states which have "opted out" of the federal exemptions under § 522(b), as well as states which have not, also provide exemptions for benefits from various public and private employee pension plans. *See* 7 L. King, Collier on Bankruptcy.

We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. *A debtor's interest in pension funds first comes into the bankruptcy estate.* To the extent they are needed for a fresh start they may then be exempted out. *Id.* at 1272–73 (emphasis added).

In construing the ambiguity apparent in § 541(c)(2) and § 522(d)(10)(E), therefore, the court concludes that Congress intended to include ERISA funds within the property of the estate, subject to exemption under § 522. Since the Pension Fund benefits are property of the estate, the Bankruptcy Court had the authority to issue the Pay Order pursuant to 11 U.S.C. § 1325(b).[14] The anti-alienation provision in the Trust Fund agreement cannot prevent the passing of the benefits to the trustee.

## II.

Having resolved the conflicting provisions *within* the Bankruptcy Code, the

court must next address the conflict between two federal statutes, i.e., the Bankruptcy Code (passed in 1978) and ERISA (passed in 1974). While ERISA legislates against the voluntary or involuntary alienation of pension benefits, the Bankruptcy Code envisions a transfer of such benefits to the estate. The issue as framed for this court's decision, therefore, is whether the passage of the Bankruptcy Code operated as an implicit repeal of the contradictory ERISA provisions.

Generally, repeals by implication are disfavored in the law. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). "In the absence of some showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* at 550, 94 S.Ct. at 2482, 41 L.Ed.2d at 300. "[W]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* at 550–51, 94 S.Ct. at 2483, 41 L.Ed.2d at 301.

■ Despite these fundamental rules of statutory construction, the court is of the opinion that the passage of the Bankruptcy Code implicitly repealed the anti-alienation requirement of ERISA. As noted earlier, the Bankruptcy Code clearly contemplated that the Pension Fund benefits would constitute property of the estate, negating the anti-alienation provisions of ERISA. Furthermore, the Bankruptcy Code provisions on pension funds are not general statutory provisions which contradict the particularized language of ERISA; the Bankruptcy Code specifically provides that restraints on alienation do not prevent property from passing to the trustee in bankruptcy. Inasmuch as the statutes irreconcilably conflict, the last one enacted in point of time prevails as being the latest expression of legislative intent. 73 Am.Jur.2d *Statutes* § 255 (1974).

---

**14.** *See supra* note 6. A trust is clearly an "entity" which is subject to a pay order. *See* 11   U.S.C. § 101(14).

Although the Pension Fund contends that the two statutes do not irreconcilably conflict, this court finds this argument unpersuasive. The Pension Fund asserts that the conflict may be avoided by issuing a pay order to the debtor himself. This solution, however, would merely ignore the provisions of 11 U.S.C. § 1325(b), not construe it consistently with ERISA. Section 1325(b) empowers the court to direct a pay order to any entity *from which the debtor receives income.* Were the order to issue to the debtor, § 1325(b) would not come into effect, since the debtor does not receive income from himself. Any application of § 1325(b) to the present situation would result in an irreconcilable inconsistency, and thus the later provisions of 11 U.S.C. §§ 541 and 1325(b) control over the earlier provisions of 29 U.S.C. § 1056 and 26 U.S.C. § 401(a)(13).

■ The Pension Fund also argues that there can be no repeal by implication since Congress, in passing the Bankruptcy Code, set forth a list of statutory provisions which were modified by passage of the Bankruptcy Code. *See* Title III of the Bankruptcy Reform Act of 1978, Pub. L. No. 95–598, 92 Stat. 2673. Courts should be reluctant to repeal by implication any statute that is not mentioned when a later act lists laws that it repeals or modifies. *Blanchette v. Connecticut General Insurance Corps.,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Hildebrand v. Social Security Administration (In re Buren),* 725 F.2d 1080 (6th Cir.1984). It is apparent, however, that Title III of the Bankruptcy Reform Act was never intended to be a comprehensive compilation of the substantive interplay between the Bankruptcy Code and other statutory provisions. "Title III makes conforming amendments to

other acts and provisions of the United Stataes [sic] Code. *These amendments are primarily technical in nature to conform cross references in other provisions of the U.S.C. to the new provisions and designations of Titles I and II of the bill."* Senate Report at 19, 1978 U.S.Code Cong. & Ad. News at 5805 (emphasis added). Indeed, the section of Title III which pertained to ERISA merely made changes in the terminology used to refer to bankruptcy. Senate Report at 163, 1978 U.S.Code Cong. & Ad.News at 5949. Since the amendments to other acts were merely technical in nature, it should not be considered as an indication that Congress intended to preclude a finding of repeal by implication.

The Pension Fund cites several decisions under the Bankruptcy Act of 1898 which held that a debtor's interest in a trust fund containing a provision against alienation did not constitute property of the estate. *See e.g., Mason v. Eastman Kodak Co. (In re Parker),* 473 F.Supp. 746 (W.D.N.Y. 1979). The court finds these cases to be unpersuasive. As noted earlier, property of the estate was determined by a transferability-leviability standard under the Bankruptcy Act of 1898. By contrast, the Bankruptcy Code abandoned this standard, and almost all property, both exempt and nonexempt, now passes into the bankrupt's estate. The cases cited by the appellants are thus inapposite.

The Pension Fund finally cites a recent amendment of the Social Security Act in which Congress indicated that social security benefits were not intended to be subject to pay orders.[15] *See* 42 U.S.C. § 407(b) (enacted April 20, 1983). The appellant notes that the amendment indicates that courts had misconstrued the effect of the pay order provision in rulings that 11 U.S.C. § 1325(b) had implicitly repealed the

---

**15.** 42 U.S.C. § 407 provides:

(a) *Inalienability of right to future payments*—The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law.*

(b) *Inamendability of section by inference*—No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section (emphasis added).

anti-assignment provisions of the Social Security Act. *See Hildebrand v. Social Security Administration (In re Buren),* 725 F.2d 1080 (6th Cir.1984). The Pension Fund argues that the inference to be drawn from this amendment is that courts have also erred in holding that 11 U.S.C. § 1325(b) impliedly repealed the anti-alienation provisions of ERISA. In response, the appellee contends that an equally plausible inference to be drawn from this amendment is that, if Congress considered the courts' rulings on ERISA benefits to be erroneous, it could have similarly amended the ERISA provision.

The court declines, however, to draw either inference from the recent amendment to the Social Security Act, inasmuch as social security benefits are wholly different from ERISA qualified benefits. Social security benefits derive from public funds, whereas ERISA qualified pension fund payments stem from purely private investments. Furthermore, the anti-alienation provision in the Social Security Act *specifically states* that benefits shall not "be subject ... to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a). The prohibition against alienation contained in ERISA has no such limitation. It would be inappropriate, therefore, for this court to draw any conclusions from amendments to the Social Security Act.

■ In holding that the passage of the Bankruptcy Code implicitly repealed (for purposes of bankruptcy only) the inconsistent anti-alienation provision of ERISA, this court does not injure the congressional intesnt underlying the passage of ERISA. The prohibition against alienation, 29 U.S.C. § 1056, was enacted to ensure that accrued benefits would actually be available for sustenance of a Pension Fund contributor upon retirement. *See* H.R. Rep. No. 93–807, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4670, 4734. The built-in protections of Chapter 13 of the Bankruptcy Code serve the same function. Before a Chapter 13 plan may be

confirmed, the bankruptcy judge must be convinced that the plan is feasible, i.e., that the plan provides for the payment of debts while reserving enough property for the maintenance of the debtor. If a plan is not feasible, it is the duty of the bankruptcy judge to reject it. *In re Olp,* 29 Bankr. 932 (Bankr. E.D. Wis. 1983); *In re Belka,* 13 B.R. 607 (Bankr.W.D.Mich.1981). By including Pension Fund benefits in the estate of the bankrupt, therefore, the debtor may retain the amount necessary for his family's maintenance and still arrange for the orderly payment of his just debts. 11 U.S.C. § 1301 *et seq.* Accordingly, by ruling that the Pension Fund benefits are property of the bankrupt's estate, the objections of both ERISA and the Bankruptcy Code are served.

As noted earlier, ERISA benefits may be voluntarily assigned as long as the assignment is revocable at the option of the Pension Fund participant and the assignee files a document acknowledging this fact.[16] In essence, the use of ERISA qualified pension benefits to fund a Chapter 13 plan is in the nature of a revocable assignment. A case under Chapter 13 of the Bankruptcy Code is a purely voluntary proceeding; a debtor may not be involuntarily thrown into a Chapter 13 bankruptcy.[17] A debtor may revoke a transfer of benefits to a Chapter 13 trustee at any time by simply exercising his absolute right to dismiss his case. *See In re Wood,* 23 B.R. 552, 560 (Bankr.E.D.Tenn.1982). Thus, the assignment of benefits to a trustee may be fairly termed to be a voluntary, revocable assignment of benefits (although the trustee does not file a written acknowledgement with the plan administrator). Once again, this analysis shows that the court's ruling is not repugnant to the congressional objectives underlying ERISA.

For the foregoing reasons and based on the cited authorities, the court is of the opinion that benefits payable from the Pension Fund constitute property of the estate under 11 U.S.C. § 541 and, corresponding-

---

**16.** *See* 26 C.F.R. § 1.401(a)–13(e)(1).

**17.** This is so because of the constitutional prohibition against involuntary servitude. House Report at 120, 1978 U.S. Code Cong. & Ad. News at 6080–81.

ly, under 11 U.S.C. § 1306. Inasmuch as such benefits are property of the estate, the Bankruptcy Court was clearly authorized to issue the Pay Order requiring the Pension Fund to make payments directly to the Chapter 13 trustee under 11 U.S.C. § 1325(b).

IT IS THEREFORE ORDERED that the judgment of the Bankruptcy Court (May 10, 1983) denying appellant's request to vacate and set aside the Pay Order issued on August 23, 1982, be and the same is hereby affirmed.