**In re Bruce D. DeWEESE, Debtor.**

**David G. GRAY, Trustee in Bankruptcy for Bruce D. DeWeese, Plaintiff,**

v.

**INGLES MARKETS, INC. EMPLOYEES' STOCK BONUS PLAN AND TRUST and William White, Robert P. Ingle and Ronald S. Woodbery, Trustees for Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust, Bruce D. DeWeese, United States of America (United States Department of the Treasury, Internal Revenue Service) and State of North Carolina (North Carolina Department of Revenue), Defendants.**

**Bankruptcy No. A–B–83–286.**
**Adv. No. 84–0255.**

United States Bankruptcy Court,
W.D. North Carolina,
Asheville Division.

March 8, 1985.

David G. Gray, Asheville, N.C., pro se.

Henry E. Teich, Asheville, N.C., for debtor.

Betsy E. Burke, Dept. of Justice, Washington, D.C., for U.S.

Rayford K. Adams, III, Greensboro, N.C., for Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust and William White, Robert P. Ingle and Ronald S. Woodbery, Trustees.

## JUDGMENT

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER COMING ON TO BE HEARD AND BEING HEARD before the undersigned Bankruptcy Judge presiding at the December 18, 1984 session of the United States Bankruptcy Court for the Western District of North Carolina, at Asheville, North Carolina, for the trial of the subject adversary proceeding, and, IT APPEARING that the Plaintiff, David G. Gray, Trustee, was represented by his counsel of record, David G. Gray; that the Debtor was represented by Henry E. Teich; that the United States of America was represented by Betsy E. Burke of the Department of Justice, Washington, D.C.; that Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust and William White, Robert P. Ingle and Ronald S. Woodbery, Trustees, were represented by Rayford K. Adams, III; and that the State of North Carolina has not appeared in this action and was not represented at the trial; and, after reviewing the pleadings and briefs filed by the parties, hearing and considering the testimony and evidence presented at trial and the arguments of counsel for the parties, the Court announced from the bench its tentative decision and called upon the attorney for the Defendant, Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust, to submit a Recommended Order in connection therewith. Mr. Rayford Adams subsequently submitted a Recommended Order to the Plaintiff who forwarded the same to the Court without comment.

The Court after further research, and review of the pleadings, testimony, evidence, briefs and arguments of counsel, NOW, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The Debtor filed his Petition for relief under Chapter 13 of the Bankruptcy Code on June 24, 1982. Subsequently, on April 7, 1983, the Debtor converted his case to a case under Chapter 7, and the Plaintiff was appointed interim trustee of the Debtor's estate and continues in that capacity.

2. Ingles Markets, Inc. ("Ingles") operates a chain of 93 grocery stores in western North Carolina, northern South Carolina, northeastern Georgia, and eastern Tennessee. Ingles has been in business since 1963 and currently has approximately 4,000 employees, of whom approximately 2,300 have been continuously employed for more than one year and are, therefore, participants in the Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust ("the Plan"), a retirement plan established by Ingles for the benefit of its employees.

3. The Debtor has been continuously employed by Ingles since 1973 and remains an employee of Ingles at this time. As an employee of Ingles, the Debtor participates in the Plan, and as a Participant, the Debtor has an account established on his behalf in the Plan. At the time of the trial of this case, the Debtor was 100% vested in his account in the Plan.

4. The Plan is a duly qualified stock bonus plan under Section 401 of the Internal Revenue Code ("IRC"). The Plan is

funded primarily by common stock of Ingles, which stock is contributed by Ingles on an annual basis to the Trust under the Plan ("the Trust"). Said stock is held in certificates issued in the name of the Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust. No stock certificates are issued in the name of individual employees, including the Debtor, until such time as an employee is entitled to receive a distribution under the Plan. At such time, distributions are made to the employee in the form of Ingles stock. All contributions to the Trust are made by Ingles alone, and employees of Ingles (including the Debtor) cannot make voluntary contributions of any kind to the Trust.

5. As required by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and the IRC, the Plan contains the following Spendthrift Clause in Section 10.02:

The right of any Participant, former Participant, or Beneficiary to any benefit or to any payment hereunder or to any separate account shall not be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charges and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; nor shall any portion of any such right hereunder be in any manner payable to any assignee, receiver or trustee, or be liable for his debts, contracts, liabilities, engagements or torts, or be subject to any legal process to levy upon or attach.

6. The Plan further provides that distributions cannot be made to any participant or his beneficiaries until the occurrence of death, disability, retirement or a break in service through termination of employment. Thus, the Plan Trustees cannot make any distribution to any participant while said participant remains employed with Ingles. Therefore, the Debtor is not now entitled to any distribution from the Plan. Furthermore, the Debtor cannot borrow against or withdraw any funds or other assets of the Plan and Trust prior to his

being entitled to a distribution under the provisions of the Plan.

7. The Defendants White, Ingle and Woodbery are trustees of the Plan and Trust (hereinafter "the Plan Trustees") and, as such, have a fiduciary duty under the Plan and ERISA to maintain certain standards of conduct with respect to the operation of the Plan and the Trust. The Plan Trustees have the responsibility of protecting and managing the Plan assets for the exclusive purpose of providing benefits to participants and their beneficiaries. The Plan Trustees are also required to assure that the Plan is operated in accordance with its terms and the requirements of ERISA and the IRC.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over all parties to and the subject matter of this adversary proceeding.

2. Under the Bankruptcy Code, § 541(a) property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case". The legislative history indicates that § 541(a) is to be broadly construed to include all property interests, whether reachable by state-law creditors or not, and whether vested or contingent. S.R. 989, 95th Cong., 2d Sess. 75–76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In Re DiPiazza*, 29 B.R. 916, 8 CBC2d 654, 656 (N.D.Ill., B.Ct., 1983); *In Re Ryerson*, 739 F.2d 1423, 11 CBC2d 121, 122, 123 (9th Cir., CCIA, 1984). This definition draws into the estate all of the Debtor's property interests as of the filing date, save as by § 541(c)(2). This includes exemptible property which is first brought into the estate and only later removed upon the Debtor's § 522 action. *In Re McLean*, 41 B.R. 893, 11 CBC2d 406 (D.S.C., 1984).

3. That pension and ERISA benefits in general are estate property is further demonstrated by § 522 of the Bankruptcy Code which provides:

"(d) The following property may be exempted under subsection (b)(1) of this section:

"(10) the debtor's right to receive

"(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the debtor..."

■ Since this subsection specifically speaks to pension plans and profit-sharing plans, this Court must conclude Congress intended that such benefits were to be first brought into the estate and then excluded by § 522. This conclusion is buttressed by remarks made in Congressional hearings that preceded passage of the 1978 Act, of which § 522 is a part. Id., 41 B.R. 893, 11 CBC2d at 412, citing hearings before the Subcommittee on Improvements in Judicial Machinery.

■ Moreover, certain pension plans are required to be ERISA-qualified in order to be exemptible under § 522(d)(10)(E). Those plans established by "insiders" are required by this section to possess the ERISA anti-alienation clause. Id. 41 B.R. 893, 11 CBC2d at 413. Such a statutory requirement would be surplusage if Congress had not meant to include pension plans in property of the estate. A construction which invalidates part of statute is not favored in law, and the same is not warranted here.

■ 4. A limitation to the pervasive scope of estate property exists in § 541(c)(2) which provides; "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under nonbankruptcy law is enforceable under a case under this title." 11 U.S.C. § 541(c)(2). While some courts have held the ERISA anti-alienation clauses to be such enforceable restrictions, (In Re Threewitt, 24 B.R. 927, 8 CBC2d 890, 892 (D., Kansas, 1982), the legislative history firmly indicates that § 541(c)(2) is to be construed narrowly and excepts only spendthrift trusts from inclusion as property of the estate:

"Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under non-bankruptcy laws." H.R.Rep. No. 595, 95th Cong. 2d Sess. 369, U.S.Code Cong. & Admin.News 1978, p. 6325 (emphasis added).

■ A majority of courts considering the issues have so limited the subsection. See In Re Berndt, 34 B.R. 515, 9 CBC2d 848, 852 (B.Ct., N.D.Ind., 1983); McLean, 41 B.R. 893, 11 CBC2d at 413. All other restraints on transfer are avoidable in bankruptcy. § 541(c)(1)(A).

■ 5. a. In general, ERISA plans are not spendthrift trusts. A spendthrift trust is classically defined as a trust "intended to secure the trust fund against the improvidence of the cestui que [beneficiary] by protecting it against his creditors and rendering it inalienable by him before payment..." McLean, 41 B.R. 893, 11 CBC2d at 410, citing 89 C.J.S. Trusts § 26 (1955). Under § 401 of the Internal Revenue Code, however, an employee may make numerous types of transfers of his ERISA benefits without loss of their tax exempt status. These include assignments of benefits; use of the interest as loan collateral, and paying union dues with the same. Id. 41 B.R. 893, 11 CBC2d at 411. As none of these transfers would be permitted from a spendthrift trust, ERISA plans do not fall within the definition.

■ b. North Carolina law recognizes support, discretionary and protective trusts having the characteristics required by G.S. § 36A–115(b) as spendthrift trusts and makes a beneficial interest in these inalienable. However, the Ingles Markets, Inc. Employees' Stock Bonus Plan (hereinafter "Ingles Plan") fails to satisfy any of the § 36A–115(b) requirements and so is not a spendthrift trust as contemplated by § 541(c)(2) of the Code. This in turn means this vested property interest is within the purview of § 541(a) and the debtor's interest is estate property.

■ 6. Although the Court finds the debtor's interest in this profit-sharing plan to be property of the estate, it is a funda-

mental tenet of bankruptcy law that a bankruptcy trustee can acquire no greater rights in property than the debtor possessed. *In Re Wright,* 39 B.R. 623 (D.S.C., 1983). Here the Debtor had only a vested, undivided interest in a plan of ever changing values wherein distribution was delayed for an indefinite period of time (until retirement, death, etc.) The debtor had made no contributions to the Plan, as these were solely borne by his employer; and he had no rights to use or transfer his interest prior to the end of his association with this employer. The full extent of his interest was a right to share in a future distribution of company stock. This share has not been identified, nor has his interest been valued. And this, and this alone, is the interest to which the trustee succeeds. Therefore the Court concludes that the Debtor's interest, as of the Petition date, became property of the estate by operation of law, and that there is nothing further available for turnover.

■ 7. Although a vested property right, which became property of the estate by operation of law, the Debtor's interest in this plan is severely limited in scope. And in consideration of the uncertainties of when it might be payable; the unknown value of the underlying trust corpus at that future date; the fact that the Debtor has made no contributions to this fund apart from his services as a company employee and has no present rights of withdrawal or rights to receive payments out of corpus on account of this interest; and because when payable, this payment may likely be of only nominal *present* value, which would require abandonment by the trustee, the Court concludes that the trustee has the right and duty to proceed to either liquidate or abandon the debtor's said vested rights.

■ 8. That the Bankruptcy Code calls for the inclusion of ERISA benefits as estate property does not result in a loss of tax-exempt status for this or other ERISA-qualified pension funds nor taxability to their beneficiaries. While implicit repeals of statutes are not favored where avoida-ble, in this area ERISA (I.R.C. § 401) and § 541 of the Bankruptcy Code irreconcil-ably conflict. As such, the latter in time prevails over the former. *DiPiazza* 29 B.R. 916, 8 CBC2d at 662. Congress passed the Bankruptcy Code in 1978; ERISA was enacted previously in 1974. And, where the two conflict, the Code is controlling. This, in effect, means the ERISA anti-alienation clause is implicitly repealed as regards bankruptcy. As noted in § 522 of the Code, Congress acknowledged certain exemptions were dependent on ERISA-qualification and tax-free status. It would be obtuse then to consider these tax benefits which are required for exemption *out* of the estate to be lost because the property interest was a *part* of the estate.

■ Moreover, the ERISA anti-aliena-tion clause does not prevent all alienations, but rather only precludes transfers which the IRS chooses not to favor; accordingly such inclinations are not controlling over the Bankruptcy Laws passed by Congress and applied by this Court.

■ The Court concludes that to the extent Congress has manifested an intention to include ERISA benefits in the bankruptcy estate, it implicitly amended the ERISA anti-alienation prohibition to except this type of transfer. Therefore, that these interests become estate property when a beneficiary files bankruptcy in no way impairs the tax-free status of the underlying ERISA plan or affects its beneficiaries as regards the same.

BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, THE COURT HEREBY ORDERS, ADJUDGES AND DECREES that the relief sought by the Plaintiff in this Complaint for turnover of funds or other assets of the Ingles Market Employees' Stock Bonus Plan is hereby denied, for the reason that there is nothing available for turnover.

IT IS FURTHER ORDERED that the Debtor's vested interest in the Ingles Markets, Inc. Employees' Stock Bonus Plan and Trust, as of the date of the filing of the

Petition, is property of the estate subject to administration by the trustee.

IT IS FINALLY ORDERED that the trustee proceed to liquidate or abandon the asset involved herein, as appropriate, and as provided by the Code.