(No. 25316.—

FLOYD H. KILGORE *et al.* Appellees, *vs.* THE STATE BANK OF COLUSA *et al.* Appellants.

*Opinion filed December 15, 1939—Rehearing denied Feb. 8, 1940.*

WILSON, C.J., dissenting.

JAMES D. BAIRD, SCOFIELD & BELL, and EDWARD C. MACK, for appellants.

EDWARD S. MARTIN, and O'HARRA & O'HARRA, for appellee the John Deere Plow Co.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On May 20, 1935, the John Deere Plow Company, an appellee, recovered a judgment by confession in the circuit court of Hancock county for $749.81 against Floyd H. Kilgore and Ira Kilgore, formerly partners under the name and style of the Kilgore Implement Company. Execution was issued at once and placed in the hands of the sheriff, and on May 21, 1935, was returned with an endorsement of "no property found." This garnishment proceeding was then begun against the State Bank of Colusa. Floyd H. Kilgore had a checking account in the bank in which there was $605.01. The garnishee bank answered and set up a claim to this money on the part of the International Harvester Company, an appellant. That company was permitted to intervene. It asserted that it was entitled to the Kilgore bank account by virtue of two conditional sales contracts which its assignor, the International Harvester Company of America, had entered into with Floyd H. Kilgore as its dealer in farm implements. The language of those contracts is similar, and it will, therefore, be enough to set forth the terms of the International Harvester Company's exhibit A, and no further mention need be made of this appellant's assignor. Kilgore agreed to accept delivery of goods at point of shipment and pay all freight charges. He

was to make payment for the goods according to the terms of an attached price schedule in cash, or to pay interest on the balance. He agreed to execute and deliver bankable notes upon the request of the company for the unpaid purchase price. Title to all goods shipped under the contracts was reserved in the company until the goods were fully paid for. The dealer was given the right to sell the goods in the ordinary course of trade for value received, upon condition that "prior to the delivery of any of said goods to a customer the purchaser shall secure from said customer a full settlement in cash or good and bankable notes and that the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold and held in trust for it and subject to its order, as provided in paragraph four hereof, until all sums due under this contract have been fully paid."

Paragraph four provides: "Upon request of the company at any time the purchaser agrees to turn over, endorse and assign to the company a quantity of customers' notes, or, if notes are not available, then customers' accounts sufficient to fully cover and secure all indebtedness of the purchaser hereunder, such notes and accounts to be held as collateral security to said indebtedness." Kilgore guaranteed payment of the customers' notes and waived presentation, demand, protest, notice of protest and diligence both as to makers and endorsers, and, on payment of his indebtedness in full, all notes or accounts remaining in possession of the company were to be returned to him.

The evidence shows that Kilgore deposited the moneys derived from the sale of machinery obtained from the International Harvester Company in his personal account in the State Bank of Colusa along with funds received from the sale of clover seed and from the sale of goods obtained from sources other than that company. He drew checks on this account to pay the International Harvester Company and his other obligations. Between January 30 and

April 2, 1935, he had taken orders for the six articles of farm machinery, the proceeds of which are claimed by the International Harvester Company. Kilgore received $853.01 for these items and deposited this money in his checking account. On March 15, 1935, he had a balance of $63.35. From then to May 21, 1935, the date this proceeding was begun, he made twenty-one deposits totalling $6348.62, virtually all of which was the proceeds of sales of goods from the International Harvester Company. During this time he remitted $4373.39 to it. He had drawn other checks and had a balance of $605.01 as previously stated. A master found that this balance belonged to the intervenor. Objections to his report were overruled and permitted to stand as exceptions. The court sustained the exceptions and entered judgment in favor of Kilgore for the use of the John Deere Plow Company and ordered that execution issue therefor. The International Harvester Company and the State Bank of Colusa appealed to the Appellate Court for the Third District, which affirmed the judgment. The cause is here on certificate of importance.

Many questions are argued but they need not all be considered. The controlling question is whether the contracts between the International Harvester Company and Kilgore created a trust in the proceeds derived from the resale of the machinery in the course of trade. Appellants insist a trust was created, while appellees contend the contracts had no such effect. If no trust were created, it becomes unnecessary to consider the questions of waiver and estoppel against the International Harvester Company and as to the tracing of the trust funds into the bank account. An interplea in a garnishment proceeding presents the question as to the right of property. The actual interest of the debtor, subject to all equities to which the property was liable in his hands, may be shown. (*Brennan* v. *Persselli,* 353 Ill. 630, 634, 635.) The contracts between Kilgore and the International Harvester Company provided that,

"the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold and held in trust for it and subject to its order, as provided in paragraph four hereof, until all sums due under this contract have been fully paid." By paragraph four, already set forth, Kilgore agreed to turn over to the company upon request a quantity of customers' notes or accounts to fully secure his indebtedness, to be held as collateral security. The contracts of conditional sale created the relation of debtor and creditor between Kilgore and the International Harvester Company with a retention of title in the vendor to secure payment of the purchase price. This debtor and creditor relation persisted after the goods were resold. Liens of conditional sales have been held valid without recording as against judgment creditors in the absence of conduct which would estop the seller. (Ill. Rev. Stat. 1939, chap. 121½, par. 23; *Sherer-Gillett Co.* v. *Long*, 318 Ill. 432.) Here, the vendor's lien was voluntarily relinquished by the sale of the goods for cash in the course of trade, pursuant to the authority contained in the contracts themselves. We have been cited to no authority which permits the lien of the conditional sales contract to be transferred to the proceeds of the sale, so as to give the original vendor precedence over the dealer's general creditors. The Uniform Sales act relates only to the sale of goods and it contains no such authority. Section 23 provides: "Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." This section is in accord with the well-established principle that, in absence of facts which estop the owner, no one can transfer a better title than he has. (*Sherer-Gillett Co.* v. *Long, supra; Drain* v. *LaGrange State Bank,* 303 Ill. 330.)

The contracts before us envisage two successive security agreements. The first, the vendor's lien, spent its force when the goods were resold for cash. The second, a purported trust in the proceeds of sale, must be examined in the light of well-established principles governing the law of trusts to determine its true nature. A trust is an obligation arising out of a confidence reposed in one person, for the benefit of another, to apply property faithfully and according to such confidence. It may be created in any property, real or personal, legal or equitable, which is in existence, and which has value in the eye of a court of equity. To set up a valid express trust of personal property there must be a declaration by a person competent to create it, a trustee, designated beneficiaries, a certain and ascertained object, a definite fund or subject matter, and its delivery or assignment to the trustee. (*Gurnett* v. *Mutual Life Ins. Co.* 356 Ill. 612, 617, 618.) The object of the contracts under consideration was to secure Kilgore's debt to the company. It was a security arrangement as contrasted to a trust. Kilgore was not a trustee in the accepted sense of the word. He was a debtor and was bound by his agreement to turn over the notes and accounts of his customers to the company to secure the unpaid balance due it. He was entitled to have the notes and accounts returned to him upon payment of his debt. In case of default by his customers, he was bound to pay the notes and accounts. If a trust had been in contemplation, Kilgore would have been entitled to a beneficial interest to the extent of his profit. The language of the contracts is insufficient to create a trust. A trust differs from a debt in many respects. The beneficiary of a trust has the beneficial interest in the trust property, while a creditor has only a personal claim against the debtor. There is no fiduciary relation between a debtor and a creditor. Trusts are enforced ordinarily in equity, while creditors usually must sue at law. The Statute of Limitations is not the same, and a trustee

is not liable if the trust *res* is destroyed without his fault, whereas a debtor remains liable, even if he loses the money he has borrowed. (Restatement of Trusts, sec. 12.) Since Kilgore was only a debtor of the International Harvester Company, the account in the State Bank of Colusa was his own and was subject to garnishment. The trial court and the Appellate Court did not err in so holding.

The State Bank of Colusa contends that it was error for the trial court to enter judgment against it, with an award of execution. It says that the only proper judgment was that the garnishee be discharged upon payment of the sum in its possession. This position would be correct if the bank had brought itself within section 7 of the Garnishment act (Ill. Rev. Stat. 1939, chap. 62, par. 7) which provides: "And in case the garnishee admits indebtedness to the judgment debtor, he shall not be liable for costs." Instead of admitting indebtedness to Kilgore, the bank set up the claim of the International Harvester Company to the money in the checking account as the proceeds of sales of six machines under the two contracts above referred to. The form of the judgment was, therefore, correct.

Appellants contend that the garnishment summons was issued prematurely because they say the execution on the original judgment was returned "nulla bona" at the direction of appellees' attorney. There is no evidence that the appellees' attorney gave the deputy sheriff any such directions and that witness denied receiving any such directions. We cannot say, in the face of this positive testimony, that the garnishment summons was issued prematurely.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE WILSON, dissenting.