In re Jessie C. **BALAY,** Debtor.

Joel A. **SCHECHTER,** Trustee in Bankruptcy, Plaintiff,

v.

Jessie C. **BALAY, Abbott Laboratories Stock Retirement Plan, Abbott Laboratories Annuity Retirement Plan and Retirement Program Committee, Defendants.**

Bankruptcy No. 88 B 17179.
Adv. No. 89 A 0465.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 9, 1990.

Ronald E. Brandt of Brandt & Cox, Lake Villa, Ill., for debtor-defendant.

Joel A. Schechter of Grossman, Mitzenmacher & Schechter, Chicago, Ill., for plaintiff.

Mary Zerega of McDermott, Will & Emery, Chicago, Ill., for remaining defendants, Abbott Laboratories et al.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the cross motions of Joel A. Schechter, Trustee in Bankruptcy ("Trustee") and Abbott Laboratories Stock Retirement Plan ("Stock Plan"), Abbott Laboratories Annuity Retirement Plan ("Annuity Plan") and Retirement Program Committee ("Committee") (collectively "Defendants") for Summary Judgment pursuant to Rule 56 of the F.R.C.P., applicable to this proceeding by virtue of Bankruptcy Rule 7056. This proceeding involves Jessie C. Balay's ("Debtor") interests in two, employer administered retirement savings plans which amount in the aggregate to about $46,000. The Trustee maintains that the interests in each of the various plans are property of the Debtor's bankruptcy estate and seeks a turnover of the representative funds so that they may be made available for the payment of creditors' claims. The Defendants maintain that the interests in the plans are either (i) not property of the bankruptcy estate or, (ii) if property of the bankruptcy estate are not subject to immediate turnover because the Debtor has no present ability to access the funds. The Court, after having reviewed the pleadings, motions, memoranda and other supporting documents, for the reasons set forth below,

grants the Trustee's motion in part and denies the Defendants' motion.

## JURISDICTION

This matter arises under §§ 541(a)(1) and (c)(2) and 522(b)(2)(A) of the Code. Accordingly, this Court has jurisdiction over this dispute under title 28 U.S.C. § 1334(b). This matter is a core proceeding under title 28 U.S.C. § 157(b)(2)(B) and (E) and is before this Court for decision pursuant to local rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this Court for hearing and determination.

## FACTS

The pertinent facts in this matter are uncontroverted.[1] On November 8, 1988 the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Code"). The Debtor has been employed by Abbott Laboratories ("Abbott") since 1976 and is fully vested in Abbott's Employee Retirement Income Security Act's ("ERISA") qualified Stock and Annuity Plans. The relevant provisions of each Plan follow.

### I. *Stock Plan–General*

Under the terms of Abbott's Stock Plan, an employee must contribute 2% of his income to the Plan. At the same time, Abbott contributes an amount approximately matching the employee's contribution. The employee's contributions may be made either on a pre-tax or after-tax basis. If the contributions are made on a pre-tax basis, then they are invested in the Payco Basic Account. If the contributions are

made on an after-tax basis, then they are invested in the Aft–Tax Basic Account. In addition to these minimums, an employee may also contribute to either Plan up to an additional 16% of his income. These additional contributions, however, are unmatched and are invested in either the Payco Supplemental or the Aft–Tax Supplemental Accounts.

### A. Pre–Tax Version Of The Stock Plan

Under the provisions of the pre-tax plan (Payco Basic & Supplemental Accounts), an employee may withdraw his contributions, including those matched by Abbott, only on retirement, death or termination of employment and then only in amounts of $500 or more.[2] However, an employee may borrow against the pre-tax plan. The borrowing provision recognizes that under some circumstances it is in the best interests[3] of plan participants to permit loans to be made to them while they continue in the active service of Abbott. Thus, the Committee, in its sole discretion, pursuant to such rules as it may establish from time-to-time, and upon the participant's application supported by such evidence as the Committee requests, may direct the plan trustees to make a loan to a plan participant. The plan further provides that such a loan: (1) may only be made from an employee's pre-tax accounts; (2) may not exceed the account balance from which the loan is made; (3) when added to the outstanding balance of all other plan loans may not exceed $50,000; (4) shall not be less than $1,000; (5) shall be evidenced by a written note which shall provide for repayment by payroll deduction; (6) shall be evenly amortized; (7) shall bear interest at the prime

---

**1.** The Trustee stipulated to the Defendants' Statement of Undisputed Material Facts submitted pursuant to local rule 12(e) of the Northern District of Illinois governing Motions for Summary Judgment. The facts were further supplemented by the following documents referred to in the Defendants' Statement of Undisputed Material Facts: Affidavit and Supplemental Affidavit of Thomas D. Trimble, Division Counsel, Abbott Laboratories; Abbott Laboratories Annuity Retirement Plan (As Amended and Restated Effective January 1, 1987 and as further amended through the 5th Amendment effective March 9, 1989); Abbott Laboratories

Stock Retirement Plan (Agreement adopted and effective July 9, 1951, as last amended by the 48th Amendment effective July 1, 1989).

**2.** On March 4, 1988 the Abbott Laboratories Stock Retirement Plan was amended deleting the hardship withdrawal provision. At the present time, neither the Annuity Plan nor the Stock Plan contains a hardship withdrawal provision.

**3.** The Stock Plan does not define the term "best interest".

rate; (8) except when the loan has been used to purchase a residence, shall specify a repayment period not to extend beyond the earlier of five years or the employee's anticipated retirement date; (9) shall be made provided there are no other loans outstanding; and (10) shall be made provided that there has been an interval of at least twelve months between the repayment of any prior loan and the current loan application.

### B. After–Tax Version Of The Stock Plan

Under the provisions of the after-tax plan (Aft–Tax Basic & Supplemental Accounts), an employee may withdraw his own contributions during his period of employment. But, amounts representing Abbott's contributions may be withdrawn only on retirement, death or termination. In both instances, however, withdrawals must be made in amounts of $500 or more. Furthermore, the after-tax plan does not contain a loan provision.

### II. *Annuity Plan*

The Annuity Plan is a deferred employee benefit plan intended to provide an employee with a monthly pension for life beginning at retirement. The Annuity Plan does not contain a loan provision nor does it permit an employee to make withdrawals during the period of his employment. Under the terms of the Annuity Plan, an employee's benefits may be withdrawn at death or no later than 60 days after the end of the year in which the last of the following events occurs: (1) the employee attains the age of 65 years; (2) the tenth anniversary of the year in which the employee commenced participation in the Annuity Plan; or (3) the employee terminates his employment. These withdrawal conditions, however, are not absolute. In certain circumstances, an employee may receive his benefits earlier. In the event that the employee terminates his employment and the present value of his accrued benefit does not exceed $3,500, the Committee, in its discretion, may direct the Plan trustee to pay the present value to the employee in a lump sum. Alternatively, if the present value of the employee's accrued benefits exceed $3,500 but is less than $12,500, the employee may elect to withdraw the entire benefit upon his termination provided that he has obtained the consent of his spouse.

The Debtor's combined interest in Abbott's plans was estimated at $45,516.71 and was broken down in the following manner.

## Account Summary

### I. STOCK PLANS

| | Stock [4] # of Shares | Total [5] Market Value |
|---|---|---|
| 1. Payco Basic [6] as of 12/31/88 | 269.71 | $16,182.60 |
| 2. Payco Supplemental [7] as of 12/31/88 | 234.88 | 14,092.80 |
| | | 30,275.40[8] |

---

4. Shares of the common stock of Abbott Laboratories purchased with Plan contributions and credited to the Debtor's individual account.

5. The accounting was provided as of the respective dates by Thomas D. Trimble, Abbott's Division Counsel, in an affidavit dated July 20, 1989.

6. The title of the account to which the Debtor's mandatory, minimum (2%) and Abbott's matching contributions are credited.

7. The title of the account to which the Debtor's voluntary, unmatched (16%) contributions are credited.

8. As of June 30, 1989 there was an outstanding loan balance in the amount of $5,696.41.

| | Stock # of Shares | Total Market Value |
|---|---|---|
| B. Aft–Tax Plan: | | |
| A. Pre–Tax Plan: | | |
| 1. Aft–Tax Basic[9] as of 12/31/88 | | |
| —Employee Cont. | —— | 2.13 |
| —Employer Cont. | 157.22 | 9,433.20 |
| 2. Aft–Tax Supplemental[10] as of 12/31/88 | 1.96 | 120.00 |
| | | 9,555.33 |
| II. ANNUITY PLAN | | |
| — Present Value as of 7/31/89 | | 5,685.98 |
| TOTAL | | $45,516.71[11] |

## STANDARD FOR SUMMARY JUDGMENT

To prevail on a Motion for Summary Judgment, the movant must meet the criteria set forth in Rule 56 of the F.R.C.P. made applicable to adversary proceedings in bankruptcy by virtue of Bankruptcy Rule 7056. Rule 56 provides that:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

▮ The movant has the burden to demonstrate that there is no genuine issue of material fact in dispute. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, the evidence offered by the movant is viewed in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, once the Motion for Summary Judgment has been made and properly supported, *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, the party opposing the motion may not rely on the mere allegations and denials contained in its pleadings, but must submit countervailing evidence to show that a genuine issue exists for trial. Fed.R.Civ.P. 56(e). No genuine issue for trial exists if the record, taken as a whole, does not allow a rational trier of fact to find for the non-moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION & ANALYSIS

### I. *Overview*

The present proceeding requires this court to revisit the issues of: (1) Whether a Debtor's interest in an ERISA-qualified Stock and Annuity retirement Plan is property of the Debtor's estate under § 541(a)(1) of the Code; and (2) if so, whether a Trustee in Bankruptcy can compel the immediate turnover of funds representing the Debtor's interest in such Plans if the Debtor has no present access to those interests? In considering these issues, the Court must remain mindful of the importance of ERISA–qualified plans and their role in retirement planning.

Such plans encourage retirement savings by allowing for the tax free growth of income under the Internal Revenue Code ("IRC"), 26 U.S.C.A. §§ 401(a)(13), 501(a) (West 1985 & Supp.1989), and ensure through ERISA's, 29 U.S.C.A. § 1056(d)(1) (West 1985), anti-alienation rules the continued existence of these savings at retirement by protecting an employee from his

---

**9.** See supra n. 6.

**10.** See supra n. 7.

**11.** Subject to a Qualified Domestic Relations Order in the amount of $13,677.81 dated May 17, 1987 in favor of the Debtor's former spouse.

own "financial improvidence in dealing with third parties", *In re McLean*, 41 B.R. 893, 900 (D.C.S.C.1984), rev'd on other grounds, 762 F.2d 1204 (4th Cir.1985). Yet, this court is also aware of the statutory inconsistencies between ERISA and the Code.

ERISA's anti-alienation rules, 29 U.S. C.A. § 1056(d)(1), restrain a participant's voluntary alienation of his pension funds. While such a restraint may arguably be viewed as a blanket prohibition rendering accrued pension benefits unavailable for the satisfaction of creditor claims, the Code's broad interpretation of what constitutes property of the bankruptcy estate is inconsistent with such an argument. This tension between ERISA and the Code has given rise to the issue of whether ERISA-qualified assets may be properly excluded from a debtor's estate. The courts have responded to this question in two very divergent ways.

A minority of courts have embraced the view that ERISA benefits are not part of a debtor's estate and are immune from creditor claims. However, a clear majority of courts, including this court, have held that ERISA benefits are includable in a debtor's estate. For the reasons set forth below, this court believes that the majority view must be followed.

Furthermore, the court is aware that on August 30, 1989 the Illinois Legislature enacted into law Public Act No. 86–393 ("Act"). That Act relates to interests in pension and retirement plans and benefits, creates an exemption for such plans, in addition to other exemptions previously available to a debtor pursuant to a chapter proceeding under the Code, and deems such plans to be spendthrift trusts under the law of Illinois. Act of August 30, 1989, P.A. 86–393, 1989 Ill.Legis.Serv. 2312 (West) (to be codified at Ill.Rev.Stat. ch. 110, para. 12–1006).[12] The Defendants contend because the Act provides that: "(b) [a] [r]etirement plan includ[ing] ... (1) a stock bonus, pension, profit sharing, annuit[y], or

similar plan or arrangement ... is conclusively presumed to be a spendthrift trust under Illinois law", Id. at ¶ 12–1006(b)(1), (c), the Debtor's interests in the Abbott Plans are excludable from the bankruptcy estate under § 541(c)(2) of the Code. The court finds that the Act provides a basis for excluding retirement plans under § 541(c)(2) of the Code, but is not applicable in this case. Accordingly, the Debtor's interests in Abbott's Plans are not subject to the provisions of the Act of August 30, 1989.

Lastly, and perhaps most importantly, this court is in accord with the Defendants' contention that under the present state of the law the Trustee cannot compel the immediate turnover of the funds representing the Debtor's interests in Abbott's Plans. The Debtor is still employed by Abbott and has no present access to his Plan interests. The Trustee cannot assert any greater right vis-a-vis the Plans than those rights the Debtor can personally exercise. Accordingly, the Trustee's right to access the funds representing the Debtor's Plan interests are also conditioned upon the events of death, retirement or termination. In October 1988 Chief Judge Grady of the United States District Court for the Northern District of Illinois ordered the Illinois Teacher's Retirement System ("ITRS") to turnover a debtor's account to the trustee in bankruptcy, despite the fact that the debtor was still employed at the time of the turnover order and, under the terms of the ITRS, had no present access to the funds in his account. *In re Perkins*, No. 86 C 7985, 1988 WL 120651 (N.D.Ill. October 28, 1988) (LEXIS 12360, Genfed library, Dist file). However, this decision is currently on appeal to the 7th Circuit. In the event that the 7th Circuit affirms Chief Judge Grady's decision in the *Perkins* case, then this court will entertain a motion for an order directing the immediate turnover of the Debtor's Plan funds to the Trustee.[13] Until then, or until the occurrence of death,

---

**12.** Subsequent citations in this opinion will be to the codified paragraph numbers.

**13.** Upon a proper showing, the order of this court may be subject to a qualified domestic relations order. See supra n. 11.

retirement or termination the estate should remain open, but untouched.

## II. *Issues*

A. Whether the Debtor's interests in Abbott's Stock and Annuity Plans constitute property of the Debtor's estate under § 541(a)(1) of the Code?

Section 541(a)(1) of the Code provides that the commencement of a case creates an estate consisting of all legal and equitable property interests of the debtor, 11 U.S.C.A. § 541(a)(1), "[regardless of] any provision in an agreement, transfer instrument, or applicable non-bankruptcy law ... that restricts or conditions transfer of such interest by the debtor...." 11 U.S.C.A. § 541(c)(1)(A). Clearly, the scope of the estate was intended by Congress to be broad. *In re Graham*, 726 F.2d 1268, 1270 (8th Cir.1984). Nevertheless, the Code still permits certain interests to pass outside of a debtor's estate. Specifically, if "[a] restriction on the transfer of a beneficial interest of the debtor in a trust ... is enforceable under applicable non-bankruptcy law, [then it] is enforceable in a case under [the Code]." 11 U.S.C.A. § 541(c)(2).

 The Defendants contend that since the restrictions against alienation contained in their Stock and Annuity Plans are enforceable under the non-bankruptcy laws of the IRC and ERISA, under the plain language of § 541(c)(2), they are also enforceable under the Code. This plain language argument has found favor among a number of courts which have held that ERISA-qualified plans are not property of a debtor's estate. *In re Threewitt*, 24 B.R. 927 (D.Kansas 1982); *In re Mosley*, 42 B.R. 181 (Bankr.N.J.1984); *In re Pruitt*, 30 B.R. 330 (Bankr.Colo.1983); *Warren v. G.M. Scott & Sons*, 34 B.R. 543 (Bankr.S.D.Ohio 1983). These courts have reached this conclusion by refusing to look beyond the simple language of § 541(c)(2) of the Code, finding that such a conclusion is consistent with the underlying ERISA policy of protecting a plan participant from his own financial improvidence. As attractive as this position is, it represents the minority view.

Section 541(c)(2)'s specific reference to "applicable nonbankruptcy law", 11 U.S.C.A. § 541(c)(2), is not so unequivocal as to preclude this court from considering its legislative history to determine if ERISA-qualified plans find an automatic safe harbor under § 541(c)(2). In fact, a number of courts have examined the legislative history of § 541(c)(2) and have determined that it was intended by Congress to exclude from a debtor's estate only trusts that meet the requirements of a traditional spendthrift trust under state law. *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *In re Goldberg*, 98 B.R. 353 (Bankr.N.D.Ill. 1989); *In re Dagnall*, 78 B.R. 531 (Bankr. C.D.Ill.1987); *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill.1983). This court is in accord with this line of authorities and their respective interpretation of § 541(c)(2) of the Code.

Although this Court recognizes that such a narrow construction of § 541(c)(2) of the Code may run counter to the policy considerations that underlie ERISA, such a construction is sustainable on at least two bases. Although rejected on appeal, at least one court has suggested that the Code implicitly repeals ERISA's anti-alienation requirement. *In re McLean*, 41 B.R. 893, rev'd, 762 F.2d 1204. There the court stated:

> [T]he ... Code clearly contemplated that the ... benefits would constitute property of the estate, negating the anti-alienation provisions of ERISA. Furthermore, the ... Code provisions on pension funds are not general statutory provisions which contradict the particularized language of ERISA; the ... Code specifically provides that restraints on alienation do not prevent property from passing to the trustee in bankruptcy. Inasmuch as the statutes irreconcilably conflict, the last one enacted in point of time prevails as being the latest expression of legislative intent. *Id.* at 900.

Furthermore, ERISA is clearly not intended to affect the operation of other federal law. "Nothing in this [Act] shall be construed to alter, amend, modify, invali-

date, impair or supercede any law of the United States...." 29 U.S.C.A. § 1144(d). As the 5th Circuit said in *Goff*, the Code was "intended to broaden the property of the estate available to creditors in bankruptcy [as well as] to limit any exemption of pension funds [from the estate]." 706 F.2d at 587. In short, the court concluded that ERISA's § 1144(d), precluding interference with other federal law, rendered the Code effective over any ERISA provision to the contrary. Proceeding on the assumption that § 541(c)(2) is to be narrowly construed, this court must now decide whether the Debtor's interests in Abbott's Stock and Annuity Plans are includable in the bankruptcy estate.

■ The Debtor's interests in Abbott's plans are includable in the estate unless the Plans qualify as spendthrift trusts under Illinois law. A trust is a confidence reposed by one person called a trustee for the benefit of another, the beneficiary, with respect to property held by the former for the benefit of the latter. *Kilgore v. State Bank of Colusa*, 372 Ill. 578, 25 N.E.2d 39 (1939). Spendthrift trusts are a special type of trust and are valid under Illinois law. *Geiger v. Geer*, 395 Ill. 367, 69 N.E.2d 848 (1946); *Newcomb v. Masters*, 287 Ill. 26, 122 N.E. 85 (1919). See also 2A Bogert, The Law of Trusts & Trustees § 221, at 416 (2d ed. 1979) (collecting numerous Illinois decisions supporting spendthrift trusts). Spendthrift trusts are created for the purpose of providing a fund for the maintenance of another while protecting the fund against the intended beneficiary's incapacity or financial imprudence, *In re DiPiazza*, 29 B.R. 916, and are distinguishable from other types of trusts by their provisions against alienation of the trust corpus by the voluntary or involuntary acts of their beneficiaries. *Geiger*, 395 Ill. 367, 69 N.E.2d 848; *Von Kesler v. Scully*, 267 Ill.App. 495 (1932).

■ However, a trust that contains anti-alienation provisions does not automatically qualify as a spendthrift trust. Under Illinois law, the trust may not be self-settled[14], Ill.Ann.Stat. ch. 110, ¶ 2–1403 (Smith–Hurd 1983 & Supp.1989); *Gordon v. Reynolds*, 114 Ill. 118, 28 N.E. 455 (1885); *Jones v. King*, 86 Ill. 225 (1877); 2A Bogert, The Law of Trusts & Trustees § 223, at 438, and the beneficiary must not have any control over or right to a distribution from the trust. *In re DiPiazza*, 29 B.R. 916. Accordingly, to warrant exclusion under § 541(c)(2) of the Code, Abbott's Plans must satisfy all three of the spendthrift requirements.[15]

With respect to the second requirement that a spendthrift trust may not be self-settled, a number of courts have held that a self-employed professional or one who is employed by a professional corporation who owns a majority stock interest in the corporation will be deemed the settlor of the ERISA-qualified plan in which he is a participant. *In re Daniel*, 771 F.2d 1352 (finding that a profit sharing plan in which a doctor was a participant was not a spendthrift trust where the doctor was employed by a medical corporation where he was the sole shareholder and director); *In re Lichstrahl*, 750 F.2d 1488 (finding that a pension plan in which an orthopedic surgeon was a participant was not a spendthrift trust where the surgeon was employed by a medical association in which the surgeon was the sole director, officer and shareholder); *Matter of Goff*, 706 F.2d 574 (refusing to recognize a Keogh plan as a spendthrift trust because the plan was determined to be self-settled). These circuit cases demonstrate that the courts invariably refuse to allow a settlor to create a trust for his own benefit that shields the trust corpus and its income from his creditors.

The Defendants suggest not by way of formal argument but rather through a

---

**14.** Self-settled refers to the process whereby a settlor establishes a trust for his own benefit.

**15.** The restrictions against alienation and assignment contained in Abbott's Plans were included pursuant to ERISA, 29 U.S.C.A. § 1056(d)(1), and the IRC, 26 U.S.C.A. § 401(a)(13). The Plans' status as ERISA qualified is uncontroverted. Accordingly, the Plans fulfill the condition of a spendthrift trust which requires that the trust contain anti-alienation provisions.

memorandum footnote that these circuit cases are distinguishable from the case at bar in that the Debtor is merely one of thousands of participants in Abbott's Plans which the Debtor had no responsibility, control or input in establishing. This contention attempts to avoid the broader principle inculcated in the circuit courts' holdings which is that a participant in an ERISA-qualified pension plan may not avoid the self-settled prohibition of spendthrift trust law by focusing attention on the mechanical or procedureal process by which the pension plan is established. As the circuit courts' holdings clearly demonstrate, any direct or indirect funding of an ERISA-qualified plan by the employee-debtor may be sufficient to convince a court that the trust is self-settled. At least one court has held that if an employer's plan contributions are in the form of employee compensation, such a plan may be deemed to be self-settled. *In re Loe*, 83 B.R. 641 (Bankr.Minn.1988).

In the present proceeding, the pre-tax and after-tax versions of Abbott's Stock Plan provided for both mandatory and voluntary employee contributions made by way of payroll deduction. To the extent that the Stock Plan was funded by the Debtor's own contributions, the Stock Plan can be deemed self-settled. It is also common knowledge, of which the court takes notice, that an employee's compensation is usually measured by his gross salary plus fringe benefits. Fringe benefits may include such things as vacation, sick leave, insurance, employee discounts, profit sharing and pension plans. These fringe benefits are designed to reward employee loyalty, longevity and to attract and keep qualified employees. Abbott's Annuity Plan was entirely funded by Abbott. Under the Stock Plan, Abbott matched on an almost dollar-for-dollar basis the Debtor's mandatory contributions. To the extent that these Plans accomplished their basic design, they should be viewed as a form of compensation. Accordingly, even though some contributions were made by Abbott, the Plans could still be viewed as having been indirectly funded by the Debtor and thus, self-settled.

Yet, there is still another reason why Abbott's Plans do not justify exclusion under § 541(c)(2) of the Code. To reiterate, under Illinois law a beneficiary may not have control over or a right to demand a distribution from the trust corpus and its income until received in accordance with the trust provisions. *In re DiPiazza*, 29 B.R. 916. The courts have not fashioned a single bright line test to determine at what point a beneficiary's control over a trust will render it non-spendthrift. However, the courts have focused on a number of factors which have translated into a finding of sufficient control to disqualify a pension plan as a spendthrift trust. For example, a number of courts, including our own District Court, have held that a pension plan participant's ability to access the whole of his interests in his employer's plan by voluntarily terminating his employment constitutes sufficient control to disqualify the plan as a spendthrift trust. *In re Perkins*, No. 86C 7985; *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989); *In re Richardson*, 75 B.R. 601 (Bankr.C.D.Ill.1987); *In re Dagnall*, 78 B.R. 531; *In re Sundeen*, 62 B.R. 619 (Bankr.C.D.Ill.1986); *In re Huff*, 61 B.R. 678 (N.D.Ill.1986); *Matter of Rolfe*, 34 B.R. 159 (Bankr.N.D.Ill.1983); *In re DiPiazza*, 29 B.R. 916.

The Defendants have argued that the ramifications of quitting one's job to gain access to one's pension plan funds may be sufficiently severe to prevent the abuse of such a practice. *In re Crenshaw*, 51 B.R. 554 (N.D.Alabama 1985). Although not argued, the same can be said of the excise tax penalty associated with the premature withdrawal of pre-tax retirement savings. Despite the deterrent effects of self imposed unemployment or tax penalties due to early withdrawal, neither of these effects prevent a plan participant from exercising his power to compel the distribution of the plan corpus; an act antithetical to the very nature of a spendthrift trust.

In the present proceeding, Abbott maintains and administers a Stock and Annuity Plan for its employees. Under the terms of both the pre-tax and the after-tax Stock Plan, a participating employee may access

his entire interest in the Plan on retirement, death or termination. In addition to these distribution triggering events, a participating employee can directly access his own after-tax contributions during employment and indirectly access his pre-tax interests through a liberal loan provision. Under the terms of the loan provision, a participating employee can apply for a loan up to 50% of his vested interest in the pre-tax plan if in the discretion of the loan committee such a loan is in the best interest of the participant. In addition to this liberal pre-tax plan borrowing provision, the Stock Plan provides an exception to the anti-alienation provision clause for qualified domestic relations orders; thus permitting an immediate, lump-sum distribution to a named payee pursuant to such an order.

█ It is uncontroverted that the Debtor has already invaded his own after-tax contributions and is presently left with an after-tax fund valued at about $9,600 equal to Abbott's matching contributions. On the pre-tax side, the Debtor has already accessed his fund by having borrowed about $11,000 in 1987 and is now left with an unpaid principal balance of approximately $5,700. Furthermore, the Debtor is divorced and his plan interests are subject to a qualified domestic relations order in favor of his former spouse in the amount of about $14,000. All three situations clearly indicate that the Debtor has an ability to invade the trust corpus. The mere fact alone that the Stock Plan assets can be reached on voluntary termination is evidence of a sufficient degree of control to vitiate the spendthrift nature of that Plan. Under the line of trust instrument cases which this court has chosen to rely upon, the trigger mechanism of voluntary termination alone is dispositive of the issue of whether the Stock Plan constitutes a spendthrift trust under Illinois law. Although the court need not express an opinion as to whether the loan provision and the qualified domestic relations order exception standing alone or in combination will vitiate the spendthrift nature of the Plan, the court is of the opinion that either would be sufficient.

The Annuity Plan, on the other hand, appears at first glance to escape inclusion as part of the bankruptcy estate. A participating employee may not make any withdrawals during his employment nor may he borrow against his part of the Plan assets. In fact no beneficiary may make a withdrawal under the Plan until the last of the following events occurs: (1) the participant attains the age of 65 years; (2) the tenth anniversary of the year in which the participant commenced participation in the Plan; or (3) the termination of the participant's employment. Thus, it appears that the spendthrift nature of the Plan has been preserved. But these withdrawal conditions are not absolute. In the event that an employee terminates his employment with Abbott and the present value of his accrued benefits does not exceed $3,500, the Committee, in its discretion, may direct the Plan trustee to pay the present value to the employee in a lump sum. Alternatively, if the present value of the employee's accrued benefits exceeds $3,500 but is less than $12,500, the employee may elect to withdraw the entire present value at the termination of his employment provided that he has obtained the consent of his spouse. The Debtor, as a beneficiary, has a vested interest under the Plan which is estimated at $5,700 and which is within the limits noted above. Furthermore, the Debtor is divorced and thus the spousal consent prohibition is no longer necessary. Thus, the conditions under which a lump sum distribution can be made have been satisfied. Accordingly, under the facts of this case the Debtor's ability to exercise his power to reach the assets in the Annuity Plan at the termination of his employment is sufficient control to warrant treating the reachable assets as property of the estate.

█ The Defendants have brought to this court's attention Public Act 86–393 ("Act") enacted into law effective August 30, 1989; amending the exemption section of the Illinois Code of Civil Procedure and providing, in part, that ERISA-qualified plans are "conclusively presumed to be spendthrift trusts". Ill.Ann.Stat. ch. 110, ¶ 12–1006(c). In reliance on this newly enacted statute, the Defendants contend that

this statute constitutes applicable non-bankruptcy law under § 541(c)(2) of the Code and therefor, the Debtor's interests in the Abbott Plans are properly exludable from the bankruptcy estate.

A debtor's property interests can be insulated from the claims of creditors in bankruptcy in one of two ways; by exclusion under § 541(b) and (c)(2) or by exemption under § 522(b)(2)(A) or (d) of the Code. Section 522(b) of the Code permits a debtor to claim either the federal exemptions at § 522(d) or state exemptions under § 522(b)(2)(A). As permitted under § 522(b)(1) of the Code, Illinois has opted out of the federal exemption scheme. Ill. Ann.Stat. ch. 110, ¶ 2–1201. The Illinois exemption scheme may be found in the Illinois Code of Civil Procedure at Chapter 110, paragraphs 12–901 and 12–1001.

In the present proceeding, the court need not arrive at a determination as to whether the Debtor's interests in Abbott's Plans are excludable or exempt because such a determination would require this court to apply the Act retroactively. The court declines the Defendants' invitation to retroactively apply the Act for the same reasons given by the court in the case of *In re Summers,* 108 B.R. 200 (Bankr.S.D.Ill.1989).

In *Summers,* the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 22, 1989 and claimed an exemption under Chapter 110, paragraph 12–1001(g)(5) of the Illinois Code of Civil Procedure for her entire interest in an employer funded profit sharing plan. In September 1989, the court ruled that paragraph 12–1001(g)(5) does not exempt an entire interest in a pension plan. The debtor moved for reconsideration of her exemption claim on the basis of P.A. 86–393 made effective on August 30, 1989. The issue on reconsideration was whether the new exemption for retirement plans under the Act applied to a Chapter proceeding filed prior to its effective date. The debtor argued that the language of the Act specifically provided that it applied to cases "pending" on or filed after August 30, 1989. Since the debtor's Chapter 7 case was pending on

August 30, 1989, the Act allowed her to exempt her entire interest in the pension plans from the claims of creditors. In declining to retroactively apply the Act, the court found that: (1) the Bankruptcy Code's governing date as to when a debtor is entitled to a claimed exemption is the date of filing; (2) where a state law conflicts with a federal law, under the Supremacy Clause of the United States Constitution the state law is rendered invalid; (3) although the Bankruptcy Code invited pre-emption by permitting a state to adopt its own exemption scheme under § 522(b)(2)(A), the Code pre-empted the time as to when such state exemptions apply; and (4) although the "pending" language was pre-empted and unenforceable, the language was severable from the statute so that the remainder of the Act was still enforceable. 108 B.R. 200.

A § 541(c)(2) exclusion must exist as of "the commencement of [a] case", 11 U.S.C.A. § 541(c)(2), while the existence of a § 522(b)(2)(A) exemption is dependent upon the "date of filing a petition [for relief]". 11 U.S.C.A. § 522(b)(2)(A). Despite the slight difference in language, the Code's prescribed date for the availability of an exclusion or exemption is the date a case is commenced which occurs on its filing date.

This case was commenced on November 8, 1988, a full ten months before the enactment of P.A. 86–393. To allow the Debtor to insulate his interests in Abbott's Plans from his creditors either on the basis of an exemption or exclusion would require the court to retroactively apply the Act. For the reasons cited by the *Summers* court, this court declines to do so. 108 B.R. 200.

■ The Defendants' contention that the Debtor's interests in Abbott's Plans are excludable is also without merit in the present proceeding. However, the court finds that for cases filed on or after August 30, 1989, P.A. 86–393 provides a basis for excluding ERISA-qualified plans from property of the bankruptcy estate under the Code's § 541(c)(2) spendthrift trust exclusion.[16]

P.A. 86–393 provides, in part, that:

**16.** An exemption differs from an exclusion in

that exempt property first passes into a bank-

(a) A debtor's interest in or right ... to the assets held in ... pensions, annuities ... benefits under a retirement plan is exempt from judgment, attachment, execution ... and seizure for the satisfaction of debts if the [retirement] plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended....

(b) Retirement plan includes the following: (1) a stock bonus, pension, profit sharing, annuity or similar plan or arrangement including a retirement plan for self-employed individuals ... (2) an individual retirement annuity ... or account....

(c) A retirement plan ... is conclusively presumed to be a spendthrift trust under the law of Illinois. Ill.Ann.Stat. ch. 110, ¶ 12–1006(a)-(c).

There are several aspects of the Act worth noting. First, it eliminated paragraph 1001(g)(5) which exempted from judgment and attachment an ERISA-qualified payment necessary for a debtor's support. Second, the statute broadened the exemption for retirement plans by including any interest in an ERISA-qualified plan. Lastly, the Act incorporated a new twist by providing that all ERISA-qualified retirement plans are *conclusively presumed to be spendthrift trusts under Illinois law.*

 In construing a statute under Illinois law, a court should construe it so that it may be given effect, *People v. Dale*, 406 Ill. 238, 92 N.E.2d 761 (1950), rev'd for other reasons, 54 Ill.2d 487, 298 N.E.2d 164 (1973), and is consonant with the common law. *Village of Niles v. City of Chicago*, 82 Ill.App.3d 60, 37 Ill.Dec. 142, 401 N.E.2d 1235 (1980). Where a statute is in derogation of the common law, it will be presumed that any inconsistency therein was not intended further than that which is specifically or clearly to be implied. *Walter v. Northern Ins. Co. of New York*, 370 Ill. 283, 18 N.E.2d 906 (1938). If a part of

a statute is declared invalid, the remainder of the statute may stand if the invalid part is severable. *Commercial Nat'l Bank of Chicago v. City of Chicago*, 89 Ill.2d 45, 59 Ill.Dec. 643, 432 N.E.2d 227 (1982). The test of severability is whether what remains after the invalid part is stricken is complete in itself and capable of being executed independently of that which is rejected. *Id.* With these rules of construction in mind, the Court has evaluated P.A. 86–393 and finds that it can be reconciled with both the Code and ERISA.

First, only Congress has the power to determine what constitutes an exclusion under the Code. Its power is derived, of course, from Article I, Section 8 of the United States Constitution which provides, in part, that:

The Congress shall have Power To ... establish ... uniform Laws on the subject of Bankruptcies throughout the United States.... U.S. Const. art. I, § 8, cl. 4.

Despite the all encompassing language of § 541(a), *In re Graham*, 726 F.2d 1268, Congress chose to exclude from the bankruptcy estate a debtor's interest in a spendthrift trust enforceable under state law. *In re Daniel*, 771 F.2d 1352; *In re Lichstrahl*, 750 F.2d 1488; *Matter of Goff*, 706 F.2d 574.

Second, despite its exclusive power to legislate in the area of bankruptcy, under Code § 522(b)(2)(A) Congress conferred upon the states the power to create their own exclusive exemption scheme as an alternative to the federal scheme outlined at § 522(d) of the Code. Acting pursuant to this grant of authority, Illinois opted out of the federal scheme, Ill.Ann.Stat. ch. 110, ¶ 12–1201, and created their own exemption scheme which can be found in the Illinois Code of Civil Procedure at Chapter 110, paragraphs 12–901, 12–1001 and also at 12–1006.

Third, in 1974 Congress enacted ERISA. 29 U.S.C.A. § 1001 et seq. Prior to its passage, the United States witnessed a rap-

ruptcy estate upon the filing of a petition in bankruptcy and may be subject to the claims of creditors unless a debtor claims a proper ex-

emption. Alternatively, an exclusion passes outside of the bankruptcy estate, is never part of the estate and is determined by Congress.

id growth in private pension plans, encompassing millions of dollars and directly or indirectly affecting interstate. commerce. ERISA was passed to protect the participants and their beneficiaries in such plans. 29 U.S.C.A. § 1001(a). Of particular importance here is ERISA's § 1144(a) which provides, in part, that:

[ERISA] ... shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a). 29 U.S.C.A. § 1144(a).

What makes this provision particularly important here is its potential effect upon the Illinois' P.A. 86–393. A number of courts have examined the relationship between ERISA and state created exemption schemes in both a bankruptcy and non-bankruptcy setting and have invalidated the state exemption schemes under the preemptive language of ERISA's § 1144(a). *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (broadly interpreting the "relate[s] to" language of ERISA's § 1144(a), the Court invalidated a Georgia statute purporting to exempt ERISA employee welfare benefit plans from attachment and garnishment actions); *In re Alagna,* 107 B.R. 301 (Bankr. Colo.1989) (holding that the Colorado statute providing for the exemption of a debtor's interest in an ERISA–qualified pension plan was pre-empted by ERISA); *In re Sellers,* 107 B.R. 152 (Bankr.E.D.Tenn.1989) (holding that the Tennessee statute providing for the exemption of a debtor's interest in pension plans qualified under the Internal Revenue Code §§ 401 et. seq. was pre-empted by ERISA); *In re Dyke,* 99 B.R. 343 (Bankr.S.D.Tex.1989) (holding that the Texas statute providing for the exemption of a debtor's interest in a retirement plan qualified under the Internal Revenue Code of 1986 was pre-empted by ERISA).

The Illinois Act, set out at Chapter 110, paragraph 12–1006, seeks to exempt retirement plans using language strikingly similar to the language used in both ERISA and the statutes of Colorado, Tennessee and Texas. Under the foregoing authorities, the Illinois Act may not survive the pre-emption language of ERISA's § 1144(a).

However, the Illinois Act contains a unique provision not found in the statutes of Colorado, Tennessee or Texas. The provision states, in part, that:

A retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986 as now or hereafter amended ... is conclusively presumed to be a spendthrift trust under the law of Illinois. Ill.Ann.Stat. ch. 110, ¶ 12–1006(c).

Fourth, the State of Illinois has the power to determine what constitutes a spendthrift trust. U.S. Const. amend. X. As discussed earlier, in order for a trust to be enforceable as a spendthrift trust under Illinois law: (1) the trust must contain an anti-alienation provision; (2) the trust must not be self-settled; and (3) the property of the trust must be out of the control of the beneficiary. *In re DiPiazza,* 29 B.R. 916; *Gordon,* 114 Ill. 118, 28 N.E. 455; *Jones,* 86 Ill. 225; *Von Kesler,* 267 Ill.App. 495. To satisfy the requirements of ERISA and to qualify for tax advantages under the IRC, a pension plan must contain anti-alienation and anti-assignment provisions that protect the plan assets from the creditors of the plan participants and their beneficiaries. 29 U.S.C.A. § 1056(d); 26 U.S.C.A. § 401(a)(13). In sum, paragraph 12–1006(c) of the Illinois Act has adopted the trust attributes of ERISA as its own in defining what constitutes a spendthrift trust under Illinois law. Although a trust's tax qualified status under § 401(a)(13) of the IRC only depends on its anti-alienation provision, to deem such trusts spendthrift is not an abrogation of the common law of Illinois of spendthrift trusts. Rather, the Court views the Illinois Act as an attempt by the legislature to create a very narrow exception to Illinois spendthrift law applicable only to retirement plans that are tax qualified. Furthermore, it is reasonable to assume that the Illinois legislature was fully aware of the judicial decisions voiding various state exemption statutes on the basis of ERISA's § 1144(a) pre-emptive lan-

guage. It appears that even if the exemption portion of Chapter 110, paragraph 12–1006 was declared invalid, paragraph 12–1006(c) standing alone is capable of being executed and enforced independently and should be given effect.

Fifth, as previously indicated, Code § 541(c)(2) and the cases which have interpreted this section have already excluded spendthrift trusts from property of the bankruptcy estate. Based on the foregoing analysis, Chapter 110, paragraph 12–1006 is reconcilable with the Code. The court is obligated to construe the Illinois Act so that it may be given effect. Were the court to categorize the Act as only an exemption statute, it would violate § 1144(a) of ERISA. Alternatively, if the court views the Act as creating an exclusion, such an interpretation would put the statute at odds with Congress' exclusive power to create exclusions under the Code. Neither interpretation alone would allow the Court to fulfill its obligation to give effect to the act of the Illinois legislature.

■ Armed with yet another unavailing argument, the Defendants contend that if the Trustee is allowed to reach the Debtor's Plan interests, the Plans' tax qualified status may be jeopardized. The Defendants support this contention by citing to a Private Letter Ruling issued by the Internal Revenue Service ("IRS"). In it, the IRS stated that: "The order of the U.S. Bankruptcy Court, if honored, would benefit the general creditors of the [retirement] plan participant and would result in a prohibition attached under § 401(a)(1) [of the IRC]." Priv. Ltr. Rul. 8,829,009 (April 6, 1988). A Court of the District has specifically addressed this argument in the case of *In re DiPiazza*, 29 B.R. 916. There the court refused to recognize the position taken by the IRS in its Private Letter Ruling, suggesting that such rulings are not binding on the courts. *Id.* at 923. See also 26 U.S.C.A. § 6110(j)(3); *David R. Webb, Inc. v. C.I.R.*, 708 F.2d 1254, n. 1 (7th Cir.1983)

(stating private letter rulings may not be used or cited as precedent).

For all of the foregoing reasons, this court is not persuaded by the Defendants to exclude the Debtor's interests in Abbott's Plans from property of the bankruptcy estate.

B. Whether the Trustee can compel the immediate turnover of the funds representing the Debtor's interests in Abbott's Stock and Annuity Plan if the Debtor is still employed by Abbott and does not have present access to those funds?

■ This issue is one of timing and raises the question as to when the Trustee can actually reach the Debtor's pension assets. All that is unequivocal about this question is the paucity of authority on this matter.

The Defendants have cited to the well established principle that a trustee's claim to estate property is no greater than a debtor's claim at the time of filing. *In re Silldorff*, 96 B.R. 859; *In re Joliet–Will County Community Action Agency*, 58 B.R. 973 (Bankr.N.D.Ill.1986); *In re Huff*, 61 B.R. 678; *In re Shepard*, 29 B.R. 928 (Bankr.M.D.Florida 1983). In reliance on this legal proposition, the Defendants contend that if the Debtor has no present access to his funds because one of the trigger events—death, retirement, or termination—has not occurred, then neither does the Trustee. The Trustee, on the other hand, contends that this Court's refusal to order an immediate turnover of pension assets for creditor distribution will result in nothing more than a Pyrrhic [17] Victory for the Trustee on the issue of whether the funds are property of the estate.

This court has found only a few cases which have directly dealt with the very narrow issue of whether a trustee can compel the turnover of assets from an ERISA–qualified plan where the debtor's right to reach such funds is dependent upon the occurrence of some future event. *In re*

---

**17.** A victory gained at ruinous loss, such as that of Pyrrhus the Greek over the Romans in B.C. 279.

*Perkins,* No. 86 C 7985; *In re Lyons,* 114 B.R. 572 (Bankr.C.D.Ill.1990); *In re Smith,* 103 B.R. 882 (Bankr.N.D. Ohio 1989); *In re Silldorff,* 96 B.R. 859; *In re DeWeese,* 47 B.R. 251 (Bankr.W.D.N.C. 1985).

In *Smith,* the court ordered the debtor's employer to immediately turnover the funds held in a profit sharing plan to the trustee in bankruptcy. Under the terms of the profit sharing plan, a participant was entitled to a plan distribution upon death, retirement or termination. Although the debtor was still employed, he had not only achieved vesting status but had reached retirement age. 103 B.R. at 883.

In *DeWeese,* the debtor was a fully vested participant in his employer's stock bonus retirement plan. The plan was funded by the common stock of the employer contributed by the latter on an annual basis and held in the name of the plan. A participant's interest in the plan were reachable only at death, disability, retirement or termination. The court ruled that the debtor's interest in the plan was property of the bankruptcy estate. 47 B.R. at 254–255. The court went on to note, however, that the debtor's interests were limited in scope and stated that: "[T]he full extent of his interest was a right to share in a future distribution of company stock ... and this, and this alone is the interest to which the trustee succeeds". *Id.* at 256. The court concluded that although the debtor's interest "became property of the estate by operation of law, there is nothing further available for turnover". *Id.* at 256.

And finally in *Silldorff,* the courts holding clearly reflects the view that when a trustee succeeds to a debtor's interests he takes those interests together with all incidental baggage attached to such interests. In this case the debtor was a participant in an ERISA–qualified employee stock ownership plan. Distributions under the plan were conditioned upon a participant's retirement, disability, death or termination. The plans further provided for in-service loans and hardship withdrawals. After having ruled that the debtor's plan inter-ests were property of the estate, the court went on to consider "whether, ... the bankruptcy trustee has any right to demand distribution at the present time". 96 B.R. at 862. The court held that the trustee was not entitled to compel the turnover of the assets reasoning that the trustee could only exercise those rights exercisable by the debtor. The debtor had not severed his employment relationship. Thus, "[since] the debtor has no present absolute right to compel distribution ... the trustee ... has no right to compel distribution either". *Id.* at 867.

Other cases have spoken indirectly to the turnover issue. *In re Brooks,* 60 B.R. 155 (Bankr.N.D. Texas 1986); *In re Huff,* 61 B.R. 678; *In re Shepard,* 29 B.R. 928. These cases only hint as to how the court might rule if the issue was squarely before it.

In *Brooks,* the court suggests that the trustee takes the debtor's interests subject to his withdrawal limitations. The debtor was a shareholder in a medical association and a participant in the association's ERISA–qualified profit sharing plan. As a participant, the debtor had a separate segregated account. The plan conditioned distribution on the occurrence of death, disability, retirement or termination. The court ruled that the plan did not qualify as a spendthrift trust under Texas law, the debtor's interests in the plan were not exempt and the debtor's interests were property of the bankruptcy estate. However, the court noted that: "Of course, a bankruptcy trustee can acquire no greater rights in the property than the debtor possessed. (Citation omitted.) Dr. Brooks apparently has no present rights of withdrawal or rights to receive payments out of corpus." 60 B.R. at 160 n. 4.

See also *In re Huff,* 61 B.R. 678 (stating that if a debtor has no present access to retirement funds neither does the trustee, even if such interests are includable in his estate and are not exempt); *In re Shepard,* 29 B.R. 928 (stating that "[u]nder the Bankruptcy Code, where a debtor holds ... bare legal title to property without the equitable interest ... [only] bare legal title

becomes property of the estate ... [thus] a trustee succeeds to only such title and rights in the property as the debtor had....").

But see *In re Perkins*, No. 86 C 7985; *In re Lyons*, 114 B.R. 572. In *Perkins*, Chief Judge Grady reached a different conclusion regarding the trustee's ability to reach plan assets, ordering the immediate turnover of the debtor's pension funds in the Illinois Teacher's Retirement System, despite the fact that the debtor was still employed and did not have present access to the funds himself. No. 86 C 7985. This decision is on appeal to the 7th Circuit Court of Appeals.[18]

Also in *Lyons*, Judge Lessen as recently as a month ago ordered the immediate turnover of a debtor's funds in the State Employee's Retirement System of Illinois to the trustee in bankruptcy. In his opinion, Judge Lessen indicated that to limit a trustee's right to access pension funds to when the debtor is entitled to a distribution of such funds may be a theoretically correct result but administratively unreasonable and impractical, *Id.* at 578, because the burden on the court and the trustee to keep the case open and to monitor it would be excessive. *Id.* at 578. Relying on § 105 of the Code, Judge Lessen ordered the turnover of pension funds reasoning that to delay a distribution would frustrate the goals of the Code which include the prompt administration of the estate and an equitable distribution of the debtor's assets to the creditors. *Id.* at 578.

§ 541(a)(1) of the Code, although broadly interpreted, *In re Graham*, 762 F.2d 1268, merely defines what interests of a debtor are transferred into the bankruptcy estate rather than setting forth specific rules concerning the existence and scope of the interests in a given asset. *In re Farmer's Market, Inc.*, 792 F.2d 1400 (9th Cir.1986). "To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate...." 4 Collier on Bankruptcy ¶ 541.06, at 541–27 (15th ed. 1989).

The court has discovered no other primary authority, but for the cases of *Perkins*, No. 86 C 7985 and *Lyons*, 114 B.R. 572, that suggests that the Trustee in the present proceeding is not bound by those restrictions which prevent the Debtor from withdrawing funds from the Abbott Plans. Clearly there are no Code provisions that would permit the Trustee to require the Debtor and his employer to terminate the Debtor's employment as a means of affording the Trustee immediate access to the Debtor's Plan interests. Nor are we persuaded that the only practical solution to the present access problem is to compel the immediate turnover of the debtor's pension funds to the trustee under the authority of § 105 of the Code. *In re Lyons*, at 578.

In this case, the Debtor has vested interests in both the Stock and Annuity Plans. § 541(a)(1) of the Code provides that those interests are property of the Debtor's estate. Thus, the Trustee may be said to succeed to the Debtor's interests in those Plans' assets. However, § 541(a)(1) of the Code is not so broad as to sweep into the estate the funds themselves, unless those funds are reachable by the Debtor; made reachable by the occurrence of one of several triggering events. To hold that the Trustee is entitled to receive funds which the Debtor himself is unable to presently access would be to grant the Trustee greater rights than those of the Debtor. That, this court is not willing to do with the matter pending before the Court of the 7th Circuit.

Nor does the court think this holding has given the Trustee merely a Pyrrhic Victory. The refusal to order the premature turnover of assets to the Trustee doesn't leave the Trustee completely helpless. As was suggested in *DeWeese*, 47 B.R. 251, unless the Trustee desires to keep the bankruptcy estate open until the time that the debtor

---

18. To reiterate, in the event that the 7th Circuit affirms Chief Judge Grady's decision, then the court, upon a proper motion, will order the immediate turnover of the Debtor's Plan funds subject to any other orders previously entered by a court of competent jurisdiction which may affect such funds. See supra n. 11 & 14.

would have the right to withdraw funds or receive payments, he may contemplate the abandonment of his claim or a liquidation of the interest such as by sale. Neither the debtor or the Trustee should abandon his claim nor liquidate his interest in the Plans' assets without the court's order.

## CONCLUSION

For the foregoing reasons the Trustee's Motion for Summary Judgment is granted in part and the Defendants' Motion for Summary Judgment is denied.

## ORDER

IT IS ORDERED for the reasons set forth in the Memorandum Opinion dated the 9th day of March, 1990, the court grants Joel A. Schechter's, Trustee in Bankruptcy, ("Trustee"), Motion for Summary Judgment, in part, and orders that (1) Jessie C. Balay's ("Debtor") interests in the Abbott Laboratories Stock Retirement Plan ("Stock Plan") and Abbott Laboratories Annuity Retirement Plan ("Annuity Plan") be and such interests are found to be property of the estate, and (2) but denies the immediate turnover of the Plan's funds to the Trustee pending the decision of the 7th Circuit Court of Appeals in the case of *In re Perkins*, (USDC Case No. 86 C 7985). The court further denies the Defendants' Motion for Summary Judgment and further orders that neither the Trustee or the Debtor shall abandon nor liquidate their interests in the Plans without an order from this court.